OLIVE A. WORTHINGTON *vs.* MICHELINA SHEWCOV.

OLIVE A. WORTHINGTON *vs.* NICHOLAS SHEWCOV.

JUNE 3, 1959.

PRESENT: Roberts, Paolino and Powers, JJ.

POWERS, J.  These are two actions of trespass for assault and battery on the person of the plaintiff's intestate.  Prior to the trial the plaintiff moved that she be substituted as party plaintiff in her capacity as administratrix of the estate of her late husband Park N. Worthington.  The cases were tried together before a justice of the superior court sitting with a jury and resulted in a verdict for the defendant in each case.  Each case is before us on the plaintiff's bill of exceptions containing nine exceptions, only one of which has been pressed, namely, the seventh, that a portion of the charge was prejudicial error in that it invaded the province of the jury.

By agreement of counsel the instant cases were argued before us together with a companion case, Olive A. Worth-

ington v. Michelina Shewcov, Ex. No. 9871. The latter case involves an action of trespass brought by the plaintiff in her own behalf and for reasons of clarity we have this day filed a separate opinion therein. *Worthington* v. *Shewcov*, 89 R. I. 178.

The pertinent testimony discloses that on January 20, 1949 defendants Nicholas and Michelina Shewcov, husband and wife, rented to Park N. and Olive A. Worthington, husband and wife, an apartment on the third floor of their premises located at 284 Friendship street in the city of Providence. The defendants occupied the second floor apartment beneath that rented by the Worthingtons.

The relationship of landlord and tenant was something less than harmonious from the first day that the Worthingtons became tenants. The plaintiff testified that she and her husband were not permitted to use the front door, that water was not always available, and that other utilities such as heat and light were inadequate. This testimony was flatly contradicted by defendants. They testified that plaintiff walked noisily in her own apartment and was continually slamming doors, which complaints plaintiff testified were untrue.

On May 16, 1949 an altercation occurred which led to the present litigation. The testimony of plaintiff and defendants as to what happened is in sharp conflict. The plaintiff testified that on the afternoon of that day she started down the front stairs from the third floor when defendant Nicholas Shewcov started up the stairs from the second floor, blocked her passage and told her that she could not use the front door; that defendant's wife Michelina Shewcov ran up the stairs and punched her three times in the stomach; that she, plaintiff, called to her husband for assistance and defendants withdrew to their own apartment on the second floor.

The plaintiff further testified that when her husband approached the open door of defendants' apartment he was

dragged in by both defendants and while each held an arm "they began beating him over his head, his chest, his back, and his face, and punching him all they could with their fists."

The defendants' version is considerably different. Nicholas Shewcov testified that he and his wife were sitting in the living room of their apartment with the door to the landing open when plaintiff passed by on her way downstairs to the front door; that he asked her not to slam the door on her way out, whereupon she called to her husband saying "landlord bothered me"; and that her husband came downstairs, entered the apartment of defendants, grabbed defendant Nicholas by the shirt and raised his hand to strike him. Nicholas further testified: "I raise my hand and slap him back. Then I jerk and my shirt torn. I had these scratches here on my neck." The testimony of defendant Michelina is in substance a corroboration of that given by her husband.

Eleanor Murphy, assistant record librarian at the Rhode Island Hospital, testifying from microfilm copies of the hospital record, stated that at 3:08 p.m. on May 16, 1949 Park Worthington was brought to the hospital by an accident ambulance and was treated for "Fractured nose and epistaxis, fine squeaks in left lung base." He was released two hours later and again treated on the following day. No testimony was offered to prove or deny that the fracture resulted from the skirmish between Park Worthington and the Shewcovs.

Lieutenant Leo F. Maher of the Providence police department testified from a record made by him at the time that on May 16, 1949 Park Worthington went to the police station and complained that about 2:30 p.m. on that day he had been assaulted by both defendants, more or less in the manner described by plaintiff. It appears from the lieutenant's testimony that both the Worthingtons and the Shewcovs were questioned by the police and each couple

accused the other. The police record shows that on the day in question Nicholas stated that he met plaintiff on the landing but otherwise the account of the incident he gave to the police was substantially the same as his testimony at the trial. The police apparently took no action on the complaint.

The plaintiff alleges nine grounds of error in each of her bills of exceptions but presses only one exception, namely, the seventh: "To that portion of the charge of the Trial Justice in which the Trial Justice stated, 'I have seen no evidence that would convince this Court that I should charge you on punitive damages, because I see no act of violence and wanton deliberateness that would warrant that, so that the only damages you can assess are compensatory damages and not punitive damages, as far as this Court is concerned.' "

The trial justice charged the jury in part as follows: "If by a fair preponderance of the testimony you find that either one or both of these defendants unlawfully laid a hand on the plaintiffs, and you find that by a fair preponderance of the testimony, then your verdict must be for the plaintiff." Discussing the plea of self-defense the court stated: "Now self defense is nothing more than opposing that unlawful laying of the hands upon the body of another by a force sufficient to turn aside the actual assault or the intended assault. That's what self defense means. Now I've given you the simplest definition of both the assault and battery and the self defense. The primary proof lies upon the plaintiff, but when the defendant comes along and says that he did it in self defense then he must show you that he did it in self defense."

The trial justice continued: "Now if you find that the plaintiff has not made out a case and that the defendant has made out his case as far as self defense is concerned, then, of course, your verdict shall be for the defendant and you don't go into the question of damages. However, if

on the other hand you find that the plaintiff has made out her case and the defendant has failed to show self defense, then you go to the question of damages."

After stating the foregoing on the nature of the case as it related to liability the trial justice made the following observation on the question of damages: "Now counsel, in his argument, said something about punitive damages. I have seen no evidence that would convince this court that I should charge you on punitive damages, because I see no act of violence and wanton deliberateness that would warrant that, so the only damages you can assess are compensatory damages and not punitive damages, as far as this court is concerned."

It is well settled in this jurisdiction that exemplary or punitive damages may be awarded in the discretion of the jury for torts involving malice, wantonness, or willfulness. *Hargraves* v. *Ballou*, 47 R. I. 186. And in *Kenyon* v. *Cameron*, 17 R. I. 122, at page 125, the court stated: "The court fulfills its function when it instructs the jury whether the case is one that is proper for such damages, and brings to their mind the evidence of wilful malice or aggravation, if such there be, on which they are to exercise their discretion."

The plaintiff concedes, however, that in the instant cases it was not within the discretion of the jury to award punitive damages because of the provisions of general laws 1956, §9-1-8, which prohibit the award of punitive damages for actions brought by executors or administrators for willful torts committed against their intestate.

She contends, however, that the remark of the trial justice, "I see no act of violence and wanton deliberateness that would warrant that," made to the jury on the question of damages constituted an invasion of the jury's province on the question of liability. She argues that these words, reasonably construed, go to the heart of her testimony and

reflect on her credibility. We are of the opinion that her exception is well taken in each case.

It is her testimony that when her husband went to the open door of defendants' apartment to remonstrate with them regarding an alleged assault on his wife he was attacked without provocation and received painful blows about the head, chest, back and face. We cannot say that this testimony was impartially considered by the jury when weighed in connection with the observation of the trial justice. We are of the opinion that the words complained of constituted a comprehensive conclusion and could have seriously affected the jury's appraisal of the witness' credibility. See *Flint* v. *Nicholson*, 67 R. I. 513.

The defendants contend, however, that even if the language employed by the trial justice in his charge on the question of punitive damages constituted error, it was not prejudicial when the entire charge is read as a whole. We do not agree with this contention. The words used by the trial justice and of which plaintiff complains came at the very end of the charge to the jury. Speaking of a comparable situation in *W. C. Viall Dairy, Inc.* v. *Providence Journal Co.*, 79 R. I. 416, this court stated at page 422: "It is well to recall that the statements under consideration were given to the jury at the very end of the charge, thus tending to impress strongly on their minds the closing words of the trial justice. This part of the charge tended to invade the province of the jury and to affect their unbiased consideration of all the evidence in the case. At least we cannot say definitely that it did not do so. In its effect it could have nullified in the minds of the jury all proper instructions previously given * * *."

Furthermore, almost immediately succeeding the language complained of in the instant case, the trial justice remarked: "This case is very simple in its elements, and I believe that you won't have any trouble in arriving at a verdict in all three cases." This enhances our conclusion

that the jury may well have been misled by the language of which plaintiff complains.

The record discloses that the writs were issued and delivered to the sheriff for service on May 15, 1951, just one day before the statute of limitations would have barred action. The original return date was June 28, 1951, but the writs were returned to the plaintiff's attorney on June 7, 1951, without service having been made for the reason that the sheriff was unable to locate defendants. Subsequently the attorney for plaintiff twice altered the return date and delivered them to the sheriff for service. On the occasion of the first alteration, service was not made for the same reason, but on the second occasion the return date was altered to April 14, 1954 and service was made on April 1 of that year. This was only a few weeks less than five years after the incident which gave rise to this litigation.

Counsel for defendants demurred to the declarations on the ground that the actions were barred by the statute of limitations and the demurrers were overruled. The defendants took exceptions to the rulings but did not prosecute bills of exceptions. Thereafter defendant in each case filed a special plea of the statute of limitations, to which pleas plaintiff demurred. The demurrers were sustained and again defendants took exception but prosecuted no bills of exceptions. They then filed general pleas of the statute of limitations, pleas of self-defense and pleas of the general issue, and the cases were tried on these pleas. They resulted in a verdict for the defendant in each case and plaintiff prosecuted her bills of exceptions on the issue of the charge to the jury, but defendants did not prosecute bills of exceptions on the rulings relating to the statute of limitations.

The defendants contend, however, that they are entitled to raise those issues before us. They argue that an appellate court will not grant a new trial even though prejudicial error was committed by the trial justice wherever it appears on the face of the writ that the suit was barred by

the statute of limitations, since to do so would serve no purpose. They cite cases in several jurisdictions in support of their contention, but no Rhode Island case is called to our attention.

Assuming without deciding that there is merit in defendants' contention that the statute of limitations is a bar to the prosecution of the cases before us, we cannot agree that they are entitled to raise the issue here. It is well settled that we will consider only those questions raised in a bill of exceptions duly prosecuted to this court.

In *Union Fabrics Corp.* v. *Tillinghast-Stiles Co.*, 58 R. I. 190, a verdict for one dollar was returned by the jury for the plaintiff whose motion for a new trial was granted by the trial justice. The defendant took exception and prosecuted its bill of exceptions to this court. The plaintiff attempted to argue before us an exception which it had taken in the court below, but was not permitted to do so for the reason that it had not prosecuted a bill of exceptions. At page 194 the court stated: "* * * we fail to see how, at the mere request of a party who appears before us to oppose a bill of exceptions by his adversary, we can entertain alleged exceptions taken by him during a trial which are not before us on a bill of exceptions in his own behalf."

General laws 1956, §9-24-17, provides: "Any person or party who has taken exceptions in the superior court may prosecute a bill of exceptions to the supreme court by taking the following procedure: * * * if a motion for a new trial has been made, then within seven (7) days after notice of decision thereon, he shall file in the office of the clerk of the superior court notice of his intention to prosecute a bill of exceptions * * *." It is further provided: "If any party to an action has complied with the provisions in this section hereinbefore set forth, the time for all other parties to the action to comply herewith shall be extended three (3) days."

The right of review by bill of exceptions and the manner of its exercise are statutory in origin. *Union Fabrics Corp. v. Tillinghast-Stiles Co., supra.* And the statute is jurisdictional. *Stanton* v. *Hawkins,* 41 R. I. 501; *Batchelor* v. *Batchelor,* 39 R. I. 110. It is clear from the provisions of the statute that any party to an action aggrieved by a ruling or decision in the superior court to which exception was taken can raise that exception for consideration here only by prosecuting a bill of exceptions on his own behalf.

In each case the plaintiff's seventh exception is sustained, and each case is remitted to the superior court for a new trial.

*Isidore Kirshenbaum, Alfred Factor,* for plaintiff.

*James J. McAleer, Joseph V. Cavanagh,* for defendants.