Quinlan T. REGAN, Joseph Mollicone, John S. Renza, Jr., d/b/a
RMR Associates

v.

The CHERRY CORPORATION (also known as The Cherry Electrical Products Co.), Cherry Semiconductor Company, Inc., and certain as yet unknown John Does.

CHERRY SEMICONDUCTOR COMPANY, Third–Party Plaintiff,

v.

AMPEREX ELECTRONIC CORPORATION and Amperex Electronic Industries, Inc., Third–Party Defendants.

No. C.A. 88–0250 L.

United States District Court, D. Rhode Island.

Feb. 10, 1989.

Deming E. Sherman and Mark A. Pogue, Edwards & Angell, Providence, R.I., for RMR Associates.

Gerard Petros, Gregory L. Benik, Hinckley, Allen, Snyder & Comen, Providence, R.I., for The Cherry Corp. and Cherry Semiconductor Co., Inc.

David J. Oliveira, Mark O. Denehy, Adler Pollock & Sheehan, Providence, R.I., for Amperex Electronic Corp.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

The present dispute concerns the alleged improper disposal of hazardous waste by defendants, The Cherry Corporation, Cherry Semiconductor Company, Inc., and certain as yet unknown John Does, on plaintiffs' property. Plaintiffs, Quinlan Regan, Joseph Mollicone, John Renza, d/b/a RMR Associates, have brought a three-count action seeking recovery under two provisions of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), and on a common law trespass claim. Moreover, plaintiffs are praying for a monetary recovery and punitive damages in each of the counts.

In response, defendants filed the instant motion to dismiss. They maintain that one of the CERCLA claims should be dismissed because plaintiffs failed to give the required sixty-day notice before bringing suit and because the relevant statutory provision does not permit the recovery of cleanup costs by private citizens as plaintiffs request. Furthermore, defendants seek dismissal of the trespass action on the ground that plaintiffs did not own the property involved when the trespass allegedly occurred. Finally, defendants move for dismissal of all the punitive damages claims for several reasons.

This Court agrees that one of plaintiffs' CERCLA claims must be dismissed because the relevant statutory section does not permit citizen suits seeking recovery of cleanup costs. In addition, plaintiffs' prayer for punitive damages on its other CERCLA claim must be dismissed because the relevant section only permits the recovery of response costs and not damages. However, this Court finds that plaintiffs have alleged a valid trespass action under the theory of continuing trespass. Moreover, their complaint sufficiently alleges the type of conduct for which the award of punitive damages is proper. Therefore, defendants' motion to dismiss is granted as it relates to the CERCLA claims and denied as it af-

fects plaintiffs' trespass claim and related prayer for punitive damages.

*Background*

Plaintiffs are the current owners of a parcel of land located at 99 Bald Hill Road in Cranston, Rhode Island. They allege that in 1972, Micro Components Company Inc. (later renamed Cherry Semiconductor Company, Inc.) sublet property immediately adjacent to plaintiffs' land. In 1977 Micro Components Company, Inc. was acquired by Cherry Electrical Products Corporation. Cherry Electrical Products Corporation changed its name to The Cherry Corporation in 1986.

Plaintiffs allege that the Cherry Corporation, Cherry Semiconductor Company, Inc. and their predecessors in interest "knowingly, wrongfully and maliciously disposed of generated hazardous wastes" onto plaintiffs' Bald Hill Road property. Plaintiffs' Complaint at 3. They maintain that such "wastes" constitute hazardous substances under CERCLA, § 101(14), 42 U.S.C. § 9601(14).

On April 21, 1988, plaintiffs filed a three count complaint against Cherry Semiconductor Company, Inc., The Cherry Corporation, and certain unknown John Does. The John Does are defined as those individuals who directed the other defendants to pollute the Bald Hill Road site. Plaintiffs brought Count I pursuant to § 107 of CERCLA, 42 U.S.C. § 9607; Count II pursuant to § 310(a)(1) of CERCLA, 42 U.S.C. § 9659(a)(1); and Count III pursuant to the common law of trespass. On each of these counts plaintiffs seek $1,000,000 in "general damages for the costs of cleanup to date," $5,000,000 in punitive damages, the costs of their suit including reasonable attorney fees, and a declaration that the defendants are liable for future cleanup expenses.

On July 20, 1988, defendants filed the instant motion to dismiss. Defendants maintain that Count II, the § 310 claim, should be dismissed in its entirety because plaintiffs failed to satisfy the section's sixty-day notice requirement, and because § 310 does not provide for the recovery of damages or response costs. Second, defen-

dants contend that Count III's trespass claim must be dismissed in its entirety because plaintiffs did not have title or possession of the property when the alleged tort occurred.

Finally, defendants seek dismissal of all plaintiffs' punitive damages claims. Defendants rely on two arguments. First, with regard to the trespass claim, they maintain that plaintiffs have failed to allege the requisite level of culpability to justify the award of punitive damages. They contend that Rhode Island law only allows an action for punitive damages where the defendant's conduct is so wicked that it amounts to criminality. Second, defendants assert that CERCLA § 107 does not permit private parties to recover damages—punitive or otherwise—but only allows their recovery of "response" costs. Therefore, defendants have moved for dismissal of both these punitive damages claims.

Plaintiffs filed an objection to defendants' motion to dismiss on August 31, 1988. This Court entertained oral argument from the parties on November 30, 1988 and took the matter under advisement. It is now in order for decision.

## DISCUSSION

I. *Dismissal of Plaintiffs' § 310 CERCLA Claim, 42 U.S.C. § 9659*

Plaintiffs' § 310 CERCLA, 42 U.S.C. § 9659, claim must be dismissed for two reasons. First, plaintiffs have failed to fulfill the section's sixty-day notice provision. Second, § 310 does not permit a private action for recovery of damages or reimbursement of response costs.

A. Sixty–Day Notice Requirement

■ Plaintiffs have brought Count II of their action pursuant to § 310(a)(1) of CERCLA, 42 U.S.C. § 9659(a)(1). Section 310(d), 42 U.S.C. § 9659(d), entitled "Rules applicable to subsection (a)(1) actions," provides in part:

No action may be commenced under subsection (a)(1) of this section before 60

days after the plaintiff has given notice of the violation to each of the following:

(A) The President.

(B) The State in which the alleged violation occurs.

(C) Any alleged violator of the standard, regulation, condition, requirement, or order concerned....

Plaintiffs did not give notice to the President or to the State of Rhode Island at least sixty days prior to commencing this suit. Therefore, their action under Count II of the complaint must be dismissed. *Cf. Garcia v. Cecos International, Inc.*, 761 F.2d 76, 78 (1st Cir.1985) (complaint dismissed where plaintiff failed to give sixty-day notice of intent to sue under the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 *et seq.*, as required by 42 U.S.C. § 6972(b)).

Plaintiffs maintain that this Court should, in effect, waive the requirement that they give sixty-day notice to the President and to the State. They contend that since they are seeking reimbursement of cleanup costs directly from the alleged violators, the relief they seek does not require Environmental Protection Agency ("EPA") or state involvement. Therefore, plaintiffs argue that notification to the federal and state governments is a mere formality and that they have substantially complied with § 310 of CERCLA. *See Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074 (1st Cir.1986) (Court waived the government notification requirement of CERCLA § 112(a), 42 U.S.C. § 9612(a), in a claim involving CERCLA § 107, 42 U.S.C. § 9607, where the plaintiff was not seeking reimbursement of response costs from the Superfund but only direct injunctive and monetary relief from a polluter).

Plaintiffs' argument for waiver of the sixty-day notice requirement highlights an important distinction between CERCLA § 310 and CERCLA § 107, and brings us to the second reason that plaintiffs may not maintain their § 310 claim. That is that § 310 does not provide a private right of action for response costs as does § 107. The purpose of § 310, discussed more fully below, is not to reimburse citizens for out-of-pocket expenses, but to prod government agencies into vigorously enforcing CERCLA and to allow private actions to compel compliance when the EPA and state still fail to act. While § 107 concerns liability and compensation for pollution, § 310 is aimed at coercing governmental enforcement of hazardous waste laws. Therefore, the reasoning of *Dedham Water* does not apply and plaintiffs' failure to give adequate notice is not excused.

B. Section 310 of CERCLA, "Citizens Suits" Does Not Provide A Private Right Of Action to Recover Expended Response Costs.

■ Section 310 of CERCLA does not provide a private right of action for one seeking reimbursement for cleanup costs. Both the statutory language and legislative history of § 310 as well as an examination of other CERCLA provisions demonstrates that § 310 was merely intended to goad stricter compliance with, and enforcement of, hazardous waste laws.

Plaintiffs brought Count II of their action pursuant to CERCLA § 310(a)(1), 42 U.S.C. § 9659(a)(1), entitled Citizens Suits—Authority to Bring Civil Actions. That section reads in relevant part:

(a) Authority to bring civil actions.

Except as provided in subsections (d) and (e) of this section and in section 9613(h) of this title (relating to timing of judicial review), any person may commence a civil action on his own behalf—

(1) against any person ... who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter....

In addition, subsection (c) of CERCLA § 310, specifies the types of relief that are available to one bringing a citizens suit. That section provides in relevant part:

The district court shall have jurisdiction in actions brought under subsection (a)(1) of this section to enforce the standard, regulation, condition, requirement, or order concerned ... to order such action as may be necessary

to correct the violation, and to impose any civil penalty provided for the violation ...

CERCLA § 310(c), 42 U.S.C. § 9659(c).

Section 310(c) does not permit the recovery of "cleanup costs" as plaintiffs seek. More accurately, § 310(c) limits district court jurisdiction to ordering injunctive remedial relief and to imposing "any civil penalty" provided for a violation of the relevant standard, regulation, condition, requirement, or order. Yet the courts lack jurisdiction to award money damages and reimbursement of cleanup costs under § 310.

In contrast, CERCLA § 107, permits the recovery of response costs from those who have improperly handled hazardous waste. Under § 107 such individuals are "liable for—(A) all costs of removal or remedial action incurred by the United States Government or a State ... [and] (B) any other necessary costs of response incurred by any other person." 42 U.S.C. § 9607(a)(4). The cleanup costs sought by plaintiffs appear to fit within the rubric of "necessary costs of response incurred by any other person."

Since § 107 already permits a private party to sue for response costs, if § 310 also created such a private right of action it would be redundant. It cannot be that Congress promulgated a citizens suit provision allowing the recovery of response costs that merely replicates § 107. Plaintiffs argue that § 310 differs from § 107 in that only the former permits a prevailing plaintiff to recover his attorney fees and other litigation costs. Thus, plaintiffs maintain, § 310 is different from § 107 and Congress chose to allow the type of action stated in Count II.

Plaintiffs' argument is unconvincing. If Congress had intended to permit citizens seeking response costs to recover their attorney fees, it would simply have amended § 107 to allow the recovery of these litigation costs. SARA was a comprehensive overhaul of CERCLA. Therefore, it would have been a simply matter to amend § 107 to allow recovery of attorney fees. Certainly Congress, if it had desired to allow

reimbursement of attorney fees in response cost suits, would not have established a system whereby one must bring identical claims under § 107 and § 310 as plaintiffs have done here. In fact, if plaintiffs' argument were accepted, it would render § 107's private action superfluous, because while a plaintiff could recover both response costs and attorney fees under § 310, he could recover only response costs under § 107.

The legislative history of CERCLA § 310 demonstrates that, rather than create a duplicative private action for response costs, Congress intended to establish a citizens suit provision through which the public could prod the executive branch into zealously enforcing hazardous waste laws. In addition, Congress intended that § 310 establish private attorneys general to supplement administrative action and aid in attacking CERCLA violators. *Cf. J.I. Case Co. v. Borak,* 377 U.S. 426, 432, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964) ("Private enforcement of the proxy rules provides a necessary supplement to [Securities and Exchange] Commission action.").

Congress amended CERCLA in 1986 through passage of SARA at a time when at least some of its members felt that CERCLA had been less than effective due to "misguided [EPA] policies." H.R.Rep. No. 253(I), 99th Cong., 2d Sess. 257 *reprinted in* 1986 U.S.Code Cong. & Admin. News 2835, 2931 (Separate and Dissenting Views). Therefore, Congress enacted the Citizens Suit provision of SARA, which became § 310 of CERCLA, to serve "as both a goad and an alternative to the [EPA's] own inadequate enforcement efforts." *Id.* at 290, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2965. As the House Committee most directly involved with SARA wrote in its report:

This new citizens suits provision, as amended by the Judiciary Committee, will assist in accomplishing the goals of CERCLA: the clean-up of hazardous waste sites. It provides important safeguards to protect against government inaction or violations of the Act. In view of the government's limited and overbur-

dened enforcement authority, citizens suits are essential to assure compliance with the law.

H.R.Rep. No. 253(III), 99th Cong., 2d Sess. 37, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3038, 3060.

The fact that § 310 was not intended to compensate private individuals is further demonstrated by § 310(d)(2) which provides that a citizen may not bring a § 310 action "if the [EPA] has commenced and is diligently pursuing ... [a] civil action to enforce the requirement concerned or to impose a civil penalty under CERCLA." H.R. Rep. No. 253(V), 99th Cong., 2d Sess. 82, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3124, 3205 (discussing § 310(d)(2), codified as 42 U.S.C. § 9659(d)(2)). Additionally the United States or any affected state "may intervene as a matter of right" in any citizens suit. § 310(g), 42 U.S.C. § 9659(g). These provisions help to explain why a sixty-day notice to the President and the affected state is always required. Section 310 is not designed to compensate, but to compel or to serve as a proxy for governmental enforcement of hazardous waste laws.

Finally, perhaps the most telling statement regarding the issue of available relief in § 310 citizens suits is contained in House Report No. 253(III) which reads as follows:

> [Section 310] suits may also be brought for injunctive relief only, i.e., citizens may seek a restraining order against private parties and/or a mandamus order to require the EPA or other relevant agency to perform a mandatory duty under CERCLA. None of these actions are for money damages. They are actions directly related to the principal purpose of the Superfund law—i.e., to bring about quick identification and effective cleanup of dangerous hazardous waste sites.

H.R.Rep. No. 253(III), 99th Cong., 2d Sess. 36, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3059.

In the instant matter, plaintiffs seek reimbursement for cleanup costs under Count II of their complaint. Since such relief is non-injunctive in nature, plaintiffs have failed to state a claim under CERCLA § 310, 42 U.S.C. § 9659. Therefore, defendants' motion to dismiss Count II must be granted.

## II. *Continuing Trespass*

■ In Count III of their complaint, plaintiffs allege that defendants are liable in trespass for having deposited hazardous waste on their property. In their motion, defendants argue that because plaintiffs did not own the property at the time of the alleged dumping, plaintiffs may not maintain a trespass action and Count III, which is a pendent state law claim, should be dismissed.

Plaintiffs contend defendants are liable under the doctrine of continuing trespass. The Restatement (Second) of Torts defines a continuing trespass as follows:

> *Continuing trespass.* The actor's failure to remove from land in the possession of another a structure, chattel, or other thing which he has tortiously ... placed on the land constitutes a continuing trespass for the entire time during which the thing is on the land and ... confers on the possessor of the land an option to maintain a succession of actions based on a theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass....

Restatement (Second) of Torts § 161, Comment b (1965). According to the Restatement, a subsequent purchaser of land may maintain an action for trespass against the trespasser.

> *Effect of transfer of the land.* The rule of continuing trespass stated in Comment b is of particular importance where there has been a transfer of the possession of the land.... If the possessory interest in the land has been transferred subsequent to the actor's placing of the thing on the land, the transferee of the land may maintain an action for its continuance there, except where provisions of Comment d apply.

Restatement (Second) of Torts, § 161 Comment e (1965) (The provisions of Comment d do not apply here.). Plaintiffs contend that the allegations of their complaint—

that defendants deposited waste on land and left it there, and that plaintiffs now own the land—state a valid trespass claim under the continuing trespass doctrine.

In response at oral argument, defendants argued that Rhode Island has not accepted the Restatement position and that there is no indication that it will embrace the doctrine of continuing trespass. Defendants even went so far as to state that the Court should consider certifying the issue to the Rhode Island Supreme Court.

On the contrary, the Rhode Island Supreme Court has long recognized the doctrine of continuing trespass. *See Mesolella v. City of Providence*, 508 A.2d 661, 668 (R.I.1986); *Adams v. Toro*, 508 A.2d 399, 401 (R.I.1986); *R.I. Turnpike & Bridge Authority v. Cohen*, 433 A.2d 179, 182 (R.I.1981); *Greenwood v. Rahill*, 122 R.I. 759, 412 A.2d 228 (1980); *Santilli v. Morelli*, 102 R.I. 333, 230 A.2d 860 (1967). In *Adams v. Toro*, the plaintiffs sued to have an encroaching portion of their neighbor's driveway and masonry removed from their lot. Despite the fact that plaintiffs had not held title to the property at the time of encroachment, *Adams v. United Developers, Inc.*, 121 R.I. 177, 179, 397 A.2d 503, 505 (1979), the Rhode Island Supreme Court held that plaintiffs had stated a valid cause of action under the doctrine of continuing trespass. *Adams v. Toro*, 508 A.2d at 401.

In the instant case, plaintiffs have stated a valid tort claim under the continuing trespass doctrine. Since Rhode Island clearly recognizes the doctrine, defendants' motion to dismiss Count III for failure to state a claim is denied.

## III. *Punitive Damages*

### A. CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B)

■ Defendants contend that plaintiffs may not recover punitive damages under CERCLA § 107(a)(4)(B) because it only allows private litigants to recover "necessary costs of response," and not damages. The Court agrees with defendants' position.

Far from being synonymous, the terms "response costs" and "damages" have different meanings in CERCLA. *United States v. Mottolo*, 605 F.Supp. 898, 904 (D.N.H.1985). While § 107 permits a private party to recover response costs pursuant to § 107(a)(4)(B), only the United States, a State, or an Indian tribe may sue for "damages for injury to ... natural resources" pursuant to § 107(a)(4)(C). *See generally* § 107(f)(1), 42 U.S.C. § 9607(f)(1).

The United States District Court for the District of New Hampshire recently discussed the distinction between "costs" and "damages" under CERCLA. Though written prior to SARA's 1986 amendment of CERCLA, the following reasoning is still persuasive.

> The terms "costs" and "damages" are ... assigned mutually exclusive definitions under CERCLA. The term "damages" is defined in 42 U.S.C. § 9601(6) to mean damages for injury or loss of natural resources. "Costs", although not defined in CERCLA, is consistently used to refer to costs of removal, response, or remedial action incurred in connection with the release of or disposal of hazardous wastes. *See* § 9607(a)(4)(A)–(C). By contrast, the term "damages" is consistently used in the context of natural resources or reference to the exclusive standing of federal or state government to recover for natural resource damages.... [T]he terms "damages" and "costs" maintain their distinct meanings throughout CERCLA....

*Mottolo*, 605 F.Supp. at 904.

While plaintiffs acknowledge that CERCLA does not explicitly state that private litigants can recover punitive damages, they argue that punitive damages are "necessary costs of response" under § 107(a)(4)(B). Such a construction of CERCLA strains the plain language of the statute beyond its breaking point. By definition, punitive damages do not compensate a plaintiff, nor do they remedy a wrong. Punitive damages are designed to punish a wrongdoer and deter grossly improper conduct. *City of Newport v. Fact Concerts,*

*Inc.*, 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981). Therefore, punitive damages cannot logically fit within the category of "necessary costs of response."

Since § 107(a)(4)(B) of CERCLA does not permit the recovery of punitive damages, plaintiffs claim for punitive damages under Count I must be dismissed.

### B. Trespass

■ Under Count III, the trespass claim of their complaint, plaintiffs allege that defendants "knowingly, wrongfully and maliciously" deposited hazardous waste on their land. These allegations are sufficient to put defendants on notice of the alleged conduct purportedly giving rise to the imposition of punitive damages, and to justify such an award if plaintiffs are able to prove their case.

Defendants claim that under Rhode Island law, a court may only award punitive damages if the conduct complained of amounts to "criminality." Plaintiffs maintain, perhaps half facetiously, that they have used the necessary "adverbs" to support an award of punitive damages.

Confusion in this area has arisen, in part, because courts have a tendency to string long chains of adverbs together when discussing the type of conduct for which the imposition of punitive damages is justified. While reckless conduct is often included in the laundry-list of adverbs, reckless conduct alone does not permit the award of punitive damages in Rhode Island. What is required under Rhode Island law to support a grant of punitive damages is proof that the defendant acted intentionally and maliciously in causing harm to the plaintiff.

The type of conduct that justifies the imposition of punitive damages is particularly unclear under Rhode Island case law. In the 1983 case of *Serra v. Ford Motor Credit Co.*, 463 A.2d 142, the Rhode Island Supreme Court held that punitive damages may be awarded "when the offending party's actions are so willful, reckless, or wicked that they amount to criminal conduct." *Id.* at 151. In 1984, purportedly in reliance on *Serra*, the Rhode Island Supreme Court held; "punitive damages are

proper only in situations in which the defendant's actions are so willful, reckless, or wicked that they amount to criminality." *Greater Providence Deposit Corp. v. Jenison*, 485 A.2d 1242, 1244 (R.I.1984). From the *Serra* line of cases it appears that punitive damages may be recovered for unintentional, "reckless" conduct.

In the same year that the Rhode Island Supreme Court decided *Serra*, it also decided *Carvalho v. Coletta*, 457 A.2d 614 (R.I. 1983). Seemingly in contradiction to *Serra*, the Court held: "It is well settled in Rhode Island that punitive damages are allowed in tort actions only when the defendant acted maliciously or in bad faith." *Id.* at 616. *But See In re Walker*, 7 B.R. 216, 222 (B.R.I.1980). The Bankruptcy Court ruled that "an award of punitive damages does not require malice or ill will toward the plaintiff," and cited *Smith Development Corp. v. Bilow Enterprises, Inc.*, 112 R.I. 203, 308 A.2d 477 (1973). However, the Rhode Island Supreme Court did not discuss the relevance of malice to punitive damages in *Smith Development*. Instead the Court defined "malicious" as it pertains to actions for malicious interference with a contractual relationship.

The Rhode Island Supreme Court, however, has implicitly held that *Carvalho* and *Serra* are not actually in conflict. In the 1984 case of *Morin v. Aetna Cas. and Sur. Co.*, 478 A.2d 964 (R.I.1984), the Court held as follows:

We have held on several occasions that punitive damages are allowed in tort actions only when it can be shown that the defendant has acted maliciously or in bad faith. *Carvalho v. Coletta*, R.I., 457 A.2d 614, 616 (1983). Accordingly, one seeking punitive damages must produce "evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount(s) to criminality, which for the good of society and warning to the individual, ought to be punished." *Sherman v. McDermott*, 114 R.I. 107, 109, 329 A.2d 195, 196 (1974).

*Id.* at 967. Therefore, merely reckless conduct does not fall within the category of

"willful, reckless or wicked" conduct amounting "to criminality."

The question still remains: what does the standard "willful, reckless or wicked" conduct amounting "to criminality" mean? The answer is found in the 1974 Rhode Island Supreme Court case of *Sherman v. McDermott*, 114 R.I. 107, 329 A.2d 195. In *Sherman* the Court held:

> This court has held that punitive damages may be assessed "'... upon evidence of such wilfulness, recklessness or wickedness, on the part of the party at fault, as amounted to criminality, which for the good of society and warning to the individual, ought to be punished.'" *Such "willfulness, recklessness or wickedness" has been held to be found in torts involving maliciousness, wantonness or wilfulness. Worthington v. Shewcov*, 89 R.I. 169, 152 A.2d 91 (1959)....

*Id.* at 109, 329 A.2d at 196–97 (citations omitted, emphasis added). Therefore, "willful, reckless or wicked" conduct which amounts "to criminality" is equivalent to "malicious[ ], wanton[ ] or willful[ ]" conduct, and punitive damages may only be awarded for malicious, wanton or willful conduct on the part of a defendant. Since merely reckless conduct is not malicious, wanton or willful, it cannot serve as a basis for punitive damages.

In short, under Rhode Island law, a court may only award punitive damages for *intentional* conduct that is *malicious*. Plaintiffs here have alleged that defendants acted "knowingly" and "maliciously", thus they have properly pled a claim for punitive damages.

Therefore, defendants' motion to dismiss Count III's punitive damages prayer must be denied.

## CONCLUSION

Section 310 of CERCLA does not provide a private right of action for damages or response costs. Congress intended it to serve as a goad to the EPA and a supplement to vigorous enforcement of the hazardous waste laws. Therefore, defendants' motion to dismiss Count II of the complaint

is granted. Furthermore, since CERCLA § 107 allows recovery of response costs and not damages, defendants' motion to dismiss plaintiffs' claim for punitive damages under Count I is also granted.

On the other hand, defendants' motion to dismiss plaintiffs' trespass claim, Count III, and related prayer for punitive damages is denied. Rhode Island recognizes the doctrine of continuing trespass and permits recovery of punitive damages for intentional, malicious conduct. Since plaintiffs have pled the necessary elements for continuing trespass and punitive damages, their action may go forward.

Defendants' motion to dismiss is granted in part and denied in part.

*It is so Ordered.*