**FALLOWFIELD DEVELOPMENT CORP. and E.J. Callaghan & Co., Inc.**

v.

**Leonard M. STRUNK and Betty R. Strunk.**

**Betty R. STRUNK as Guardian for Leonard M. Strunk and in her own right**

v.

**BRYN MAWR TRUST COMPANY**

v.

**Edward J. CALLAGHAN, Sr., E.J. Callaghan & Co., Inc., Fallowfield Development Corp., and Jefferson Bank.**

Civ. A. Nos. 89–8644, 90–4431.

United States District Court, E.D. Pennsylvania.

June 14, 1991.

David J. Brooman, Philadelphia, Pa., Sheila Carmody, Lewis & Roca, Phoenix, Ariz., for plaintiff.

Susan P. Le Gros, William J. Devlin, Jr., Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant.

William M. Shields, Monteverde, Hemphill, Maschmeyer & Obert, Philadelphia, Pa., for The Bryn Mawr Trust Co.

Clare Marie Diemer, Cohen, Shapiro, Polisher, Shiekman and Cohen, Philadelphia, Guy A. Donatelli, Lamb, Windle & McErlane, P.C., West Chester, Pa., for third-party defendant.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Now before this Court is plaintiffs Fallowfield Development Corp. ("Fallowfield") and E.J. Callaghan & Co.'s ("Callaghan")

Motion for Reconsideration of this Court's Memorandum and Order dated April 23, 1990, and defendants Leonard M. Strunk and Betty R. Strunk's (the "Strunks") response thereto. For the reasons stated below, plaintiffs' motion will be DENIED.

## FACTUAL BACKGROUND

The Strunks owned a tract of land of approximately 314 acres located in Chester County, Pennsylvania (the "Property") from 1943 until 1988. During that time, Leonard Strunk, an entrepreneur/inventor, conducted scientific experiments and research and development activities in a laboratory he maintained on the Property. He also operated a chainsaw manufacturing business on the Property.

On December 11, 1987, Callaghan entered into an Agreement of Sale ("Agreement") with the Strunks to purchase the Property. Callaghan assigned its rights under the Agreement to Fallowfield. On May 13, 1988, pursuant to the Agreement, Fallowfield purchased the Property from the Strunks. The Agreement contained the following representation:

(e) the property has never been used as a sanitary landfill site or a hazardous waste disposal site and the property is free of hazardous, toxic or carcinogenic substances or other pollutants.

This provision was to "survive closing or termination of this Agreement."

Fallowfield and Callaghan allege that in 1989 they discovered a large number of bottles buried in a ditch near the outskirts of the Property. They aver that this deposit of bottles was the result of the disposal by Leonard Strunk of chemicals and other waste on the Property. Fallowfield and Callaghan further claim that the Strunks never informed them that any disposal activities had ever taken place on the Property. They claim that they first became aware of the existence of the buried waste after settlement on the Property when the Pennsylvania Environmental Resources and the Pennsylvania Attorney General's Office investigated the disposal activities and discovered the disposal site.

When the waste was discovered on the Property, Fallowfield and Callaghan were compelled by state and federal environmental laws to initiate an investigation and cleanup. Fallowfield and Callaghan engaged RMC Environmental Services ("RMC") to evaluate the site and test the waste samples recovered from the site. RMC analyzed soil samples taken at several locations in the waste pile. Their testing revealed that the samples did contain hazardous waste. RMC's analysis of approximately seven bottles of samples removed from the site revealed in three of the bottles the presence, *inter alia*, of various metals and $H_2S$ (hydrogen sulfide) in solutions of low and high ph. The conclusion of RMC was that three bottles contained toxic and carcinogenic substances that are defined as hazardous waste pursuant to 40 C.F.R. 261.3, Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601(14), and Pa.C.S.A. tit. 35, § 6020.103 ("HSCA") (Purdon's 1990 Supp.).

The Strunks denied any knowledge of the presence of these glass bottles. Based upon these findings Fallowfield and Callaghan filed a complaint on December 4, 1989. On January 25, 1990, the Strunks filed a Motion to Dismiss, or in the Alternative, to Sever and Stay Certain of Plaintiff's Claims. By Memorandum and Order dated April 23, 1990, this Court granted in part and denied in part the Strunk's motion. In that Memorandum and Order, this Court held that attorneys' fees and costs are not recoverable by private parties in cost-recovery actions under Section 107 of CERCLA. Fallowfield and Callaghan seek reconsideration by this Court of the April 23, 1990 Order arguing that the Eighth Circuit's holding in *General Electric Co. v. Litton Indus. Automation Systems, Inc.*, 920 F.2d 1415 (8th Cir.1990) *cert. denied,* — U.S. ——, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991), should persuade this Court to find that attorneys' fees are recoverable response costs in private party recovery actions under CERCLA.

## DISCUSSION

This Court, in its April 23, 1990 Memorandum, examined the legislative history of

CERCLA which reveals that Congress did not intend for private parties to collect attorneys' fees in cost-recovery actions. (Memorandum at 13–14, quoting H.R.Rep. No. 253, 99th Cong., 1st sess., pt. 1, at 66–67 (1985)). The plaintiffs seek reconsideration of this Order, noting a recent Eighth Circuit opinion in which attorneys' fees were allowed in connection with a response cost recovery action.

In *General Electric v. Litton,* the Eighth Circuit held that "CERCLA authorizes, with a sufficient degree of explicitness, the recovery by private parties of attorney fees and expenses." 920 F.2d at 1422. The Eighth Circuit cites no explicit language in CERCLA which provides for this conclusion, but finds attorney fees to be a part of the "necessary costs" recoverable under § 9607(a)(4)(B). The court opined that "[a]ttorney fees and expenses necessarily are incurred in this kind of enforcement activity, and it would strain the statutory language to the breaking point to read them out of the 'necessary costs' that section 9607(a)(4)(B) allows private parties to recover." *Id.*

Essentially, the Eighth Circuit argues that the goals of CERCLA will be furthered by allowing recovery of costs and attorneys' fees and thus "bring[ing] to bear the pressure of private attorneys general on a serious national problem for which prosecutorial resources are deemed inadequate." *See MacNamara v. Korean Air Lines,* 863 F.2d 1135 (3d Cir.1988) (discussing the similarities in purpose and structure among various private attorneys general provisions and especially between the Clayton Act and RICO). The Eighth Circuit notes that:

> This conclusion is consistent with the two main purposes of CERCLA—prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party. These purposes would be undermined if a non-polluter ... were forced to absorb the litigation costs of recovering its response costs from the polluter. The litigation costs could easily approach or even exceed the

response costs, thereby serving as a disincentive to clean the site.

920 F.2d at 1422.

In *Alyeska Pipeline Service Co. v. Wilderness Soc.,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court discussed the applicability of awarding attorney fees in cases where "Congress has opted to rely heavily on private enforcement to implement public policy and to allow counsel fees so as to encourage private litigation." *Id.* at 263, 95 S.Ct. at 1624. In *Alyeska,* environmental groups sued to bar construction of the trans-Alaska pipeline. The Court of Appeals awarded attorneys' fees to the environmental groups based upon the court's equitable powers and the theory that respondents were entitled to fees because they were performing services of a "private attorney general." *Id.* at 241, 95 S.Ct. at 1613. The Supreme Court reversed, finding that:

> Congress itself presumably has the power and judgment to pick and choose among its statutes and to allow attorneys' fees under some, but not others. But it would be difficult, indeed, for the courts, without legislative guidance, to consider some statutes important and others unimportant and to allow attorneys fees only in connection with the former.

*Id.* at 263–64, 95 S.Ct. at 1625. The Supreme Court concluded that "absent explicit congressional authorization, attorneys' fees are not a recoverable cost of litigation." *Runyon v. McCrary,* 427 U.S. 160, 185, 96 S.Ct. 2586, 2602, 49 L.Ed.2d 415 (1976) (citing *Alyeska,* 421 U.S. at 247, 95 S.Ct. at 1616).

The Supreme Court noted its concern with the courts' well-intentioned interference with what is clearly within the exclusive domain of the legislature:

> It is also apparent from our national experience that the encouragement of private action to implement public policy has been viewed as desirable in a variety of circumstances. But the rule followed in our courts with respect to attorney's fees has survived. It is deeply rooted in our history and in congressional policy;

and it is not for us to invade the legislature's province by redistributing litigation costs in the manner suggested....

421 U.S. at 270, 95 S.Ct. at 1628.

Many courts have found that CERCLA lacks the specificity required under the *Alyeska* and *Runyon* holdings. *See Mesiti v. Microdot, Inc.*, 739 F.Supp. 57, 62–63 (D.N.H.1990); *Regan v. Cherry Corp.*, 706 F.Supp. 145, 148–50 (D.R.I.1989); *T & E Industries, Inc. v. Safety Light Corp.*, 680 F.Supp. 696, 707–108 (D.N.J.1988).[1] In support of this position, several courts have looked to the legislative history of CERCLA, and particularly the legislative history of the Superfund Amendments and Reauthorizations Act of 1976 ("SARA"):

For example, in *Regan*, the court noted that Congress re-examined and amended CERCLA in 1976 by enacting SARA. The court examined the availability of attorneys' fees under CERCLA and concluded that:

> If Congress had intended to permit citizens seeking response costs to recover their attorney fees, it would simply have amended § 107 to allow the recovery of these litigation costs. SARA was a comprehensive overhaul of CERCLA. Therefore, it would have been a simply [sic] matter to amend § 107 to allow recovery of attorney fees.

706 F.Supp. at 149.

The Eighth Circuit's approach fails to address the legislative history of SARA and its relationship to attorneys fees. One attempt to reconcile the SARA legislative history with the Eight Circuit's holding was made by a district court in *Gopher Oil Company v. Union Oil Company*, 757 F.Supp. 998 (D.Minn.1991). In that case the court reviewed the *Regan* case and the *General Electric* case and suggested:

> It should be noted that the reasoning in *Regan* is not necessarily superior to the Eighth Circuit's reasoning in *General Electric*. Although Congress could have specifically provided for recovery of attorneys' fees when it enacted SARA, the case law was not particularly well developed prior to SARA and thus Congress may not have been aware that courts would interpret CERCLA as disallowing the recovery of attorneys' fees.

757 F.Supp. at 1006 n. 5.

This assertion is spurious. The Supreme Court in *Alyeska* required an explicit statement of congressional intent. The definition of explicit is strained to the breaking point by the contortion which the district court offers. In order to avoid the lack of an expression of congressional intent, the district court would presume the lack of congressional awareness.[2] It is inapposite to posit an explicit statement of congressional intent, absent congressional awareness.

While the Eighth Circuit's approach appears appealing, it must be held to the standard advanced by the Supreme Court in *Alyeska*. The requirement of an explicit statement of congressional intent to shift fees from the successful plaintiff to the defendant renders the Eighth Circuit rationale deficient. The Supreme Court has required the courts to forebear from intervening in what is clearly a matter of legislative prerogative. Accordingly, plaintiffs' motion for reconsideration will be denied.

---

**1.** Additionally, the Ninth Circuit has found that CERCLA does not specifically provide for the recovery of attorneys fees. In *Idaho v. Hanna Mining Co.*, 882 F.2d 392, 396 (9th Cir.1989), the court held that "CERCLA does not state whether attorneys' fees may be awarded for actions for natural resource damages under 42 U.S.C. §§ 9607(a)(4)(C) and 9607(f) nor do any cases appear to resolve the question. We elect to make no award of attorney's fees." *Id.* at 396.

**2.** The *Alyeska* Court addressed a similar argument. The Court noted that Congress was fully aware of the "American Rule" and had made a number of specific and explicit exceptions to it.

> What Congress has done, however, while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights.

421 U.S. at 260–61, 95 S.Ct. at 1623. (footnote omitted).