**GENERAL ELECTRIC COMPANY, Appellee,**

v.

**LITTON INDUSTRIAL AUTOMATION SYSTEMS, INC. and Litton Industries, Inc., Appellants.**

**No. 89–2845.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1990.

Decided Dec. 12, 1990.

the employee in *Kelly v. Smith,* Crain had no opportunity to be heard on the punishment issue.

Bruce W. Kauffman, Philadelphia, Pa., for appellants.

James L. Moeller, Kansas City, Mo., for appellee.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BOWMAN, Circuit Judge.

This is an action brought by General Electric ("GE") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) of 1980, § 107(a), 42 U.S.C. § 9607(a) (1988). The District Court[1] ordered Litton to pay GE for certain cleanup costs incurred by GE and also ruled that GE was entitled to recover its attorney fees. Litton appeals. For the reasons set forth below, we affirm.

### I.

In 1959, Royal McBee Corporation opened a typewriter plant on a forty-acre plot in Springfield, Missouri.[2] From 1959 to 1962, Royal McBee dumped cyanide-based electroplating wastes, sludge, and other pollutants onto part of the forty-acre tract. Over time, these wastes migrated from the original dumping location, contaminating a larger area of land.

In 1965, Royal McBee merged with Litton Industries, Inc., and Litton became the surviving corporation.[3] The typewriter plant was closed in 1969, and in 1970 GE bought the plant and the surrounding land. In 1980, the Missouri Department of Natural Resources ("MDNR") learned of the hazardous substances that had been dumped at the site and GE was notified. The MDNR and GE concluded in 1981 that there was no potential for groundwater contamination, and performed no cleanup work at the site.

In 1984, GE agreed to sell the vacant nineteen acres at the site (where the dumping had occurred) to Enterprise Park, a real estate concern that intended to develop the property for commercial purposes. In July 1985 the MDNR changed course and decided to propose that the site be placed on Missouri's Registry of Abandoned and Uncontrolled Hazardous Waste Sites of Missouri. GE appealed this proposed registry, while Enterprise Park notified both GE and Litton of potential CERCLA claims. On three separate occasions from September 1985 to March 1986, the Missouri Hazardous Waste Commission held public meetings to discuss, among other things, the proposed registry of the GE site. In October 1985, the Missouri Department of Health ("MDOH") stated that the contaminants in the soil at the site posed "a significant health threat and ... should be removed." Appellants' Appendix, vol. VIII, § 58, at 1861.

During that same month, GE hired OH Materials Company to investigate the site and conduct any response actions deemed necessary. In December 1985, the Envi-

---

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri. Judge Clark's opinion is published as *General Elec. Co. v. Litton Business Sys., Inc.,* 715 F.Supp. 949 (W.D.Mo.1989).

2. This land will be referred to in this opinion as "the site."

3. Royal McBee's assets were acquired by a wholly-owned subsidiary of Litton which later was merged into a surviving corporation called Litton Industrial Automation Systems, Inc. For purposes of this opinion, "Litton" refers to both Litton Industries, Inc. and Litton Industrial Automation Systems, Inc. The judgment of the District Court as amended November 1, 1989, runs against both of these corporations.

ronmental Protection Agency ("EPA") decided that Missouri should take enforcement action for the site and stated that the 1981 MDNR findings, in light of improved scientific knowledge, were erroneous. On December 16, 1985, GE and Enterprise Park entered into a Settlement Agreement. The Agreement essentially held GE liable for any cleanup costs incurred at the site and called for GE to attempt to keep the site off the Registry.

In late 1985 and early 1986 GE, the MDNR, and Enterprise Park negotiated a Consent Decree. The Decree called for the development and implementation of a cleanup plan for the site. It required any cleanup action to be consistent with the National Contingency Plan ("NCP"), EPA Superfund Programs, 400 CFR § 300 *et seq.* (1986), and required MDNR approval of all action.

Pursuant to their site investigation, OH Materials produced an analysis of several possible cleanup actions. Although the most expensive alternative, excavation was chosen as the best and most effective response action. Excavation began on October 13, 1986. On that day, three large drums were discovered buried at the site. Shortly thereafter, a trench was discovered, along with a fourth drum. This drum contained extremely hazardous substances. Excavation continued until December 7, 1986, when work was halted pending further site analysis. More excavation was performed in May 1987 and the cleanup was completed in December 1987.

Most of the soil was disposed of as a nonhazardous waste, minimizing cleanup costs. The drums and the more-contaminated soil were disposed of as hazardous wastes. In early 1988 the MDNR approved the cleanup of the site, withdrew the proposed registry, and stated that the site had been properly cleaned.

Even though Litton had been notified by both GE and Enterprise Park in 1985 about its potential CERCLA liability, Litton never participated in any of the investigation, evaluation, or cleanup of the site. In March 1987, while the cleanup was still in progress, GE made a formal demand on Litton asking it to indemnify GE for the cleanup costs. In June 1987 GE filed suit, seeking to recover its response costs for cleaning up the site. In August 1988 GE filed an amended complaint, seeking to recover its cleanup costs pursuant to § 107(a) of CERCLA, 42 U.S.C. § 9607(a).

Following a four-day bench trial in May 1989, the District Court found that there had been a release of hazardous substances, that Litton was responsible for the release, that GE's response was necessary, and that GE's cleanup actions met the provisions of CERCLA and the NCP. The District Court ordered Litton to pay GE more than $940,000 as reimbursement for the response costs incurred. The District Court also ruled that attorney fees were recoverable, and ordered Litton to pay GE more than $419,000 in attorney fees and expenses.

On appeal, Litton claims that 1) GE should not be allowed to recover its cleanup costs because the cleanup was induced by the threat of a lawsuit; 2) GE's response was not consistent with the NCP; 3) the District Court erred in not apportioning some of the response costs to GE; and 4) the District Court erred in allowing GE to recover its attorney fees.

II.

42 U.S.C. § 9607(a) holds the party responsible for a hazardous substance release liable for cleanup costs incurred as a result of the release. It allows a private party who incurs such costs to recoup its cleanup expenses from the responsible party. 42 U.S.C. § 9607(a)(4)(B). In order for a private party to recover these costs from the responsible party, the release of hazardous substances must have "caused" the incurrence of the costs. Litton claims that a release of pollutants did not "cause" GE's response, but rather, the threat of a lawsuit "caused" GE's response.

Although couched in terms of causation, this argument is really an "unclean hands" defense to GE's CERCLA claim. Litton asserts that GE failed to tell Enterprise Park of the known contaminants at the site

when it sold the property to Enterprise Park in 1984, even though GE knew of the problem by 1980 at the latest. Litton claims that only after Enterprise Park found out about the contaminants, and threatened GE with a lawsuit, did GE begin its response. Therefore, according to Litton, the response was "caused" by GE's reaction to the possible lawsuit, not by the release of pollutants.

This argument is without merit. CERCLA is a strict liability statute, with only a limited number of statutorily-defined defenses available. *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1377–78 (8th Cir.1989); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042 (2nd Cir.1985). The available defenses are that the release was caused solely by an "act of God [or] war," or that the release was caused solely by a third party whose actions were not foreseeable by the defendant, who was exercising due care with respect to the hazardous substance. 42 U.S.C. § 9607(b). The third party must not be an employee or agent of the defendant, nor have entered into a contractual relationship with the defendant. 42 U.S.C. § 9607(b). CERCLA does not provide for an "unclean hands" defense; the liability imposed by 42 U.S.C. § 9607(a) is subject only to the defenses noted above. Thus, the motives of the private party attempting to recoup response costs under 42 U.S.C. § 9607(a)(4)(B) are irrelevant. The purpose of allowing a private party to recover its response costs is to encourage timely cleanup of hazardous waste sites. This purpose would be frustrated if a plaintiff's motives were subject to question. We will not look at the impetus behind a plaintiff's decision to begin the cleanup process; we will look only to see if there has been a release or threatened release for which the defendant is responsible. 42 U.S.C. § 9607(a). Undoubtedly such a release occurred at the site. As found by the District Court, "(f)rom 1958 to 1963, [the] defendant dumped 500 gallons per year of waste chemicals on the ground in question. Additionally, ... a trench was used to bury a barrel which contained ... toxic material." *General Elec. Co. v. Litton Business Sys.,*

*Inc.,* 715 F.Supp. 949, 957 (W.D.Mo.1989). GE's response was "caused" by Litton's release, and therefore meets this criterion of CERCLA.

### III.

Litton next argues that the mandate of 42 U.S.C. § 9607(a)(4)(B), that the response be "consistent with the national contingency plan," was not met by GE. This section allows a private party to recover its response costs from the responsible party only if the response was necessary and consistent with the NCP. 40 CFR § 300.71, entitled "Other Party Responses," details the response actions that are considered to be consistent with the NCP. If the response is characterized as a removal action, then it must be taken in circumstances warranting removal and be consistent with 40 CFR § 300.65. If the response is deemed to be a remedial action, then it must be consistent with 40 CFR § 300.68, as well as be cost-effective and provide for public comment, or a substantially equivalent opportunity for public involvement. 40 CFR § 300.71(a)(2). In addition, private party responses must comply with all applicable Federal, state, and local requirements. 40 CFR § 300.71(a)(4).

### A.

The decision whether to characterize a response action as a "removal" action or a "response" action is determined by 42 U.S.C. §§ 9601(23) and (24). A removal action is defined as

> the cleanup or removal of ... hazardous substances from the environment, ... the disposal of removed material, or the taking of such other actions as ... necessary to ... mitigate damage to the public health.... The term includes ... without being limited to ... fencing, ... provision of alternative water supplies, [and] temporary evacuation and housing of threatened individuals....

42 U.S.C. § 9601(23). A remedial action is defined as one

> consistent with permanent remedy taken instead of or in addition to removal ac-

tions.... The term includes, but is not limited to, such actions ... as storage, confinement, ... neutralization, cleanup of ... contaminated materials, recycling, ... diversion, destruction, ... dredging or excavations, ... [and] onsite treatment.... [T]he term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances....

42 U.S.C. § 9601(24).

■ We agree with the District Court's determination that GE's action can be characterized as a removal action. *General Elec. v. Litton*, 715 F.Supp. at 960. GE's excavation of soil and buried drums is undoubtedly a "removal of hazardous substances from the environment." 42 U.S.C. § 9601(23). Although CERCLA's definition of remedial action lists excavations as a remedial example, and its definition of removal action does not explicitly mention excavations, an excavation is not beyond the pale of a removal action. *See* 40 CFR § 300.65(c), which lists "(r)emoval of highly contaminated soils" and "(r)emoval of drums" as removal actions. Any distinction between "excavation" of contaminated soils and "removal" of contaminated soils is one that eludes us. We therefore conclude that it is proper to evaluate GE's response using the NCP guidelines for a removal action.[4]

**B.**

As stated earlier, in order for removal action costs to be recoverable under 42 U.S.C. § 9607(a)(4)(B), the action must be consistent with 40 CFR § 300.65. That section of the NCP states that for a removal action, the following be done: 1) a site assessment be performed; 2) an effort be made to involve the responsible party, if known; 3) an evaluation be made of possible responses, based on the following factors: a) exposure to people; b) contamination of water; c) barrels that pose a threat of release; d) contaminated soil that may migrate; e) weather conditions that may affect the contaminants; f) threat of fire; and g) other factors; 4) the cleanup action begin as soon as possible in an appropriate manner; and 5) contaminated soil and barrels of contaminants be removed, where removal will reduce the spread of contamination and the likelihood of exposure to humans. 40 CFR § 300.65.[5]

■ We agree with the District Court's determination that GE "implemented the removal action consistent with § 300.65." *General Elec. v. Litton*, 715 F.Supp. at 961. First, the site was evaluated in 1981 by the MDNR and GE, and again in 1985 by the MDOH, OH Materials, the MDNR, and GE. *General Elec. v. Litton*, 715 F.Supp. at 951–952. Second, both GE and Enterprise Park notified Litton of the potential cleanup to take place at the site.[6]

4. Litton argues that the removal action issue was never introduced by GE, nor decided upon by the District Court. On the second point, Litton is clearly wrong, as evidenced by the following passage: "The Court finds that GE's action was consistent with the NCP as a removal action." *General Elec. v. Litton*, 715 F.Supp. at 960. Regarding Litton's claim that GE never argued that its response was a removal action, GE's First Amended Complaint repeatedly refers to GE's "response action," which encompasses both removal actions and remedial actions. Appellants' Appendix, vol. I, § 2, at 30. Litton also argues that only short-term, temporary responses can be considered removals and that GE's response was neither. *See Exxon Corp. v. Hunt*, 475 U.S. 355, 360, 106 S.Ct. 1103, 1108, 89 L.Ed.2d 364 (1986); *United States v. Northeastern Pharmaceutical & Chem. Co.*, 810 F.2d 726, 731 (8th Cir.1986) ("*NEPACCO*"). The NCP, however, specifically contemplates excavations as appropriate removal actions, 40 CFR §§ 300.-

65(c)(6) and (7). We hold that GE's response was not too time-consuming to be considered a removal, as the cleanup took a little more than a year, with work performed in three segments over a span of five different months. We do not read either *Hunt* or *NEPACCO* as establishing that an excavation that totally and permanently cleans up a hazardous waste site never can be classified as a removal action.

5. 40 CFR § 300.65(b)(3) requires removal actions to end after either one million dollars has been obligated or six months have elapsed from the date of the initial response. However, 40 CFR § 300.65(i) exempts private party responses such as GE's from these limitations.

6. We note that after Litton/Royal McBee stopped dumping the chemical wastes at the site in 1962, it dumped the same wastes at the Fulbright Landfill in Springfield from 1962 to 1968. *See General Elec. v. Litton*, 715 F.Supp. at 951.

GE is not required to force Litton to participate in the evaluation and cleanup process; it is required only to attempt to involve the responsible party in the process. This requirement was satisfied.

Third, an evaluation of potential response actions was prepared by OH Materials for GE. The District Court found that "OH Materials produced a Remedial Alternatives Evaluation for the site ["RATE report"] ... which analyzed several alternative response actions." *General Elec. v. Litton*, 715 F.Supp. at 953. The District Court also found that the evaluations performed by OH Materials and the MDOH "considered points of exposure, population, environmental and welfare concerns at risk, amount, concentration, hazardous properties, hydrogeological factors, and the extent to which the contamination levels exceeded the State standards." *General Elec. v. Litton*, 715 F.Supp. at 953. The evaluation resulted in a determination that excavation was appropriate.

We are satisfied that the thorough evaluation that was performed here is consistent with the NCP; specifically, with 40 CFR § 300.65(b)(2). The site evaluation does not have to comply strictly with the letter of the NCP, but only must be consistent with its requirements. *NL Indus. Inc., v. Kaplan*, 792 F.2d 896, 898–99 (9th Cir.1986). It is not necessary that every factor mentioned by the NCP be dealt with explicitly; thus, for instance, a failure to consider explicitly the weather conditions factor is not fatal to an evaluation's consistency with the NCP. As a matter of law, the evaluation performed for GE by OH Mate-

rials was consistent with the NCP requirements concerning a removal action.

GE's response time also was consistent with the NCP's removal action guidelines. The MDNR proposed registry of the site on the hazardous waste sites listing in July 1985. In December 1985 the EPA found that the wastes at the site constituted a threat to the environment. By this time GE had hired OH Materials to assess the site and develop possible alternative responses. The RATE report was completed in February 1986. After further consultation with the state, the excavation began in October 1986. We hold that such a response time is consistent with the NCP's requirement to begin the cleanup in an appropriate manner as soon as possible.

Finally, excavation of the site is consistent with the NCP, as 40 CFR §§ 300.-65(c)(6) and (7) explicitly list removal of contaminated soils and drums containing hazardous substances as appropriate removal actions.

We hold that GE's response can be characterized properly as a removal action, was warranted by the hazardous conditions at the site, and was consistent with the NCP guidelines governing removal actions. Therefore, the costs associated with GE's response action are recoverable under 42 U.S.C. § 9607(a)(4)(B).[7]

## IV.

Litton argues that even if it can be held liable under 42 U.S.C. § 9607(a)(4)(B), it should not be held responsible for all of the costs incurred by GE. Instead, Litton

As a result of this dumping activity, Litton entered into an Administrative Order and Consent Decree with the EPA and the MDNR in March 1986. Appellants' Appendix, vol. IX, § 107. The Decree dealt with the same chemical wastes dumped at the typewriter plant site, and included an acknowledgement by Litton that the wastes were hazardous substances. *General Elec. v. Litton*, 715 F.Supp. at 958. The Decree also obligated Litton to reimburse the EPA for its cleanup costs incurred pursuant to CERCLA and the NCP. Appellants' Appendix, vol. IX, § 107, at 2631. Thus, when Litton was informed of the potential CERCLA claims at the typewriter plant site by GE and Enterprise Park, it knew or should have known of the process

that was likely to follow. Based on this prior or simultaneous knowledge, Litton cannot claim to have been shut out of the evaluation and cleanup process unfairly. Thus, GE's notification actions, coupled with Litton's prior knowledge, satisfied the NCP requirement that an effort be made to involve the responsible party.

7. Having found that GE's response was a removal action, we do not need to reach the issue of whether the response met the NCP remedial action guidelines. Similarly, as Litton's claim that it was denied due process is predicated on the assertion that GE's action was a remedial action, this claim also becomes moot.

asserts that liability for the cleanup costs should be apportioned between Litton and GE, with GE responsible for all "non-necessary" costs.[8] Litton argues that some of the cleanup costs were not "necessary" under CERCLA, but were incurred instead by GE solely to upgrade the site and realize a profit on its sale to Enterprise Park. It is this portion of the cleanup costs that Litton asserts should be apportioned to GE, because 42 U.S.C. § 9607(a)(4)(B) allows a private party to recover only its "necessary" costs of response.

As noted earlier 40 CFR § 300.71, governing private party responses, requires such responses to comply with "all otherwise legally applicable or relevant and appropriate Federal, State, and local requirements, including permit requirements." 40 CFR § 300.71(a)(4). During the course of the site evaluation and cleanup, the MDNR established a set of cleanup levels for the site. In order for the site to be considered cleaned properly, the levels of various elements (such as lead, arsenic, and nickel) in the soil could not exceed these state-imposed standards. These standards were not met until after the final cleanup performed in November 1987. Even then, one "grid" at the site did not meet the MDNR levels, even though that area had been excavated down to the bedrock and further excavation was not possible.

It was not until after the final cleanup work was performed in November 1987 that the site met the state-imposed standards and the state approved the cleanup. All of the cleanup work performed was necessary to meet the state standards. Since 40 CFR § 300.71(a)(4) incorporates applicable state requirements into the requirements of an NCP-consistent response

action, the cleanup performed by GE was "necessary" under 42 U.S.C. § 9607(a)(4)(B). To be consistent with the NCP, GE's response action had to comply with the state standards, which it did. There is no evidence of any response action taken over and above that required to satisfy the state standards. GE simply met the standards imposed by the state.[9] Thus, GE is not subject to an apportionment of "non-necessary" costs, because there were no "non-necessary" costs.

V.

■ Finally, Litton argues that the District Court erred in awarding GE attorney fees and expenses. Litton asserts that CERCLA does not allow explicitly for private parties to recover litigation expenses and therefore, under the American rule, each side must pay its own litigation costs.

The general rule is that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). "(A)bsent explicit congressional authorization, attorneys' fees are not a recoverable cost of litigation." *Runyon v. McCrary*, 427 U.S. 160, 185, 96 S.Ct. 2586, 2601, 49 L.Ed.2d 415 (1976). Thus, in order to uphold an award of attorney fees, we look to the language of CERCLA. We must find more than "generalized commands," *Runyon v. McCrary*, 427 U.S. at 186, 96 S.Ct. at 2602; there must be a clear expression of Congress' intent.

As noted earlier, 42 U.S.C. § 9607(a)(4)(B), allows private parties to recover "necessary costs of response . . . consistent with the national contingency plan."

---

8. Litton's related apportionment argument based on 42 U.S.C. § 9613(f)(1) cannot succeed, because that section, allowing for apportionment of costs between liable parties, does not apply to GE. GE would be a section 9613(f)(1) liable party only if it owned the site at the time the wastes were dumped or was responsible otherwise for the dumped wastes. *See* 42 U.S.C. § 9607(a). Since that is not the case, GE is not a liable party and cannot be held liable under 42 U.S.C. § 9613(f)(1).

9. Litton argues that GE went "above and beyond the call of duty" when cleaning the site to satisfy its Settlement Agreement obligations to Enterprise Park. That agreement, however, only obligated GE to clean the site so that it would not be placed on the state hazardous site registry. Appellants' Appendix, vol. VII, § 35, at 1581. To keep the site off of the registry, GE had to meet the state cleanup standards, which is what 40 CFR § 300.71(a)(4) required. Thus, the agreement did not obligate GE to clean the site past what CERCLA and the NCP required.

42 U.S.C. § 9601(25) defines "response" as "remove, removal, remedy, and remedial action; all such terms (including the terms 'removal' and 'remedial action') *include enforcement activities related thereto."* (Emphasis added.). A private party cost-recovery action such as this one is an enforcement activity within the meaning of the statute. *See Cadillac Fairview/California, Inc., v. Dow Chem. Co.,* 840 F.2d 691, 694 (9th Cir.1988); *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 892 (9th Cir.1986). Attorney fees and expenses necessarily are incurred in this kind of enforcement activity and it would strain the statutory language to the breaking point to read them out of the "necessary costs" that section 9607(a)(4)(B) allows private parties to recover. We therefore conclude that CERCLA authorizes, with a sufficient degree of explicitness, the recovery by private parties of attorney fees and expenses. This conclusion based on the statutory language is consistent with two of the main purposes of CERCLA—prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party. These purposes would be undermined if a non-polluter (such as GE) were forced to absorb the litigation costs of recovering its response costs from the polluter. The litigation costs could easily approach or even exceed the response costs, thereby serving as a disincentive to clean the site.

Litton also questions whether the attorney fees awarded here are reasonable in amount. We give great deference to the District Court's judgment in the award of attorney fees, because "the district court is best equipped to determine whether hours were reasonably expended [and] whether the attorneys' hourly rates are within the general rates charged ... in the relevant community...." *Moore v. City of Des Moines,* 766 F.2d 343, 346 (8th Cir.1985), *cert. denied,* 474 U.S. 1060, 106 S.Ct. 805, 88 L.Ed.2d 781 (1986). Finding no abuse of discretion, we affirm the award.

Based on our reading of the statute, we find no error in the ruling of the District Court that CERCLA allows a private party to recover its attorney fees and expenses incurred in bringing a cost-recovery action pursuant to 42 U.S.C. § 9607(a)(4)(B).[10] We are satisfied that the District Court's award was legally correct and reasonable in amount and that it should not be disturbed.

## VI.

We affirm the judgment of the District Court awarding GE the reasonable and necessary costs of its cleanup, including the attorney fees and expenses incurred in bringing this cost-recovery action.

---

10. We are not aware of any other circuit court ruling on this issue. We note that various district courts have split on this question. Besides the District Court in this case, this issue was decided in *Pease & Curren Ref., Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945, 949–52 (C.D.Cal.1990) (holding that attorney fees are recoverable in a private party CERCLA action); *Shapiro v. Alexanderson,* 741 F.Supp. 472, 480 (S.D.N.Y.1990) (recoverable); *United States v. Hardage,* 750 F.Supp. 1460, 1511 (W.D.Okl.1990) (not recoverable); *Fallowfield Dev. Corp. v. Strunk,* 1990 WL 52745, *5–*6 (E.D.Pa.1990) (not recoverable); *Mesiti v. Microdot, Inc.,* 739 F.Supp. 57, 62–63 (D.N.H.1990) (not recoverable); *Regan v. Cherry Corp.,* 706 F.Supp. 145, 149 (D.R.I.1989) (not recoverable); *T & E Ind. v. Safety Light Corp.,* 680 F.Supp. 696, 708 (D.N.J.1988) (not recoverable); *BCW Assoc. v. Occidental Chem. Corp.,* 1988 WL 102641, *23 (E.D.Pa.1988) (not recoverable); and *Hemingway Transp., Inc. v. Khan,* 108 B.R. 378, 383 (Bkrtcy.D.Mass.1989) (not recoverable).