**David STEWMAN, et al., Plaintiffs,**

v.

**MID–SOUTH WOOD PRODUCTS OF MENA, INC., et al., Defendants.**

Civ. No. 91–2047.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Jan. 23, 1992.

Robert D. Ridgeway, Jr. and Kenneth Breckenridge, Ridgeway & Breckenridge, Hot Springs, Ark., for plaintiffs.

Philip M. Clay, Wood, Smith, Schnipper & Clay, Hot Springs, Ark., Bill Thompson and Richard Spearman, Thompson & Llewellyn, Fort Smith, Ark., for Mid–South.

P.K. Holmes, Warner & Smith, Fort Smith, Ark., for Edward Hines Lumber Co. and EHLCO.

Bob Jones, III, Jones, Gilbreath, Jackson & Moll, Fort Smith, Ark., for B & F Engineering, Inc.

Mike Shaw, Shaw, Ledbetter, Hornberger, Cogbill & Arnold, Fort Smith, Ark., Joseph G. Manta and Joel Schneider, Manta & Welge, Philadelphia, Pa., for Rollins.

Ben Core, Daily, West, Core, Coffman & Canfield, Fort Smith, Ark., John G. Parker and Craig Pendergrast, Paul, Hastings, Janofsky & Walker, Atlanta, Ga., for Law Engineering, Inc.

Richard Spritzer, U.S. Dept. of Justice, Environmental Defense Section, Washington, D.C., for EPA.

Marsha T. Foster, Mitchell, Williams, Selig, Gates & Woodyard, Little Rock, Ark., for Dale Rogers.

## MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

In the early 1980s, state and federal environmental authorities began investigating alleged discharges of hazardous wastes from a lumber treatment plant in Polk County, Arkansas. In March, 1988, the Environmental Protection Agency, a federal authority, sued Hines Lumber Company and Mid–South Wood Products,[1] seeking to enjoin further discharges and to require those companies to clean up the affected area or to repay the federal government for the cost of doing so. In May, 1988, the two companies and the EPA agreed to a consent judgment that mandated specific remedial actions by Hines and Mid–South. Hines was dissolved as a corporation around that time, but the EHLCO Trust was established to carry out Hines's responsibilities under the decree.

The plaintiffs own land near the lumber treatment plant. They now sue the EPA,[2] alleging that the remedial plan specified by the consent decree was inadequate in scope, was negligently carried out, and failed to prevent further contamination of their land and water supplies. The plaintiffs ask for damages and for an order requiring the EPA to reopen and expand the remedial plan for the affected area.

The plaintiffs characterize their claims as arising under federal environmental statutes and state common law. The EPA now moves for summary judgment, arguing that the plaintiffs have failed to offer any evidence that would subject the EPA to liability for damages under the federal law in issue, that the plaintiffs have failed to exhaust their administrative remedies as to the claims based on state law, and that the reopening order sought is not within the power of the court. The motion will be granted.

I.

The plaintiffs bring their federal claims under the Comprehensive Environmental Response, Compensation, and Liability Act. See 42 U.S.C. §§ 9601–9675. That law establishes an extensive scheme for evaluating the extent of damage from hazardous wastes, devising appropriate remedial measures, determining the costs to individuals and to federal and state governments of implementing those measures, and assessing those costs against persons who are liable for them under the language of the statute.

The act provides that the following persons may be liable for the costs of remedial measures—"the ... operator of ... a facility,"[3] see 42 U.S.C. § 9607(a)(1); "any person who at the time of disposal of any hazardous substance ... operated any fa-

---

1. Hines Lumber Company operated the lumber treatment plant between 1967 and 1978. Mid–South Wood Products has operated the plant since 1978.

2. The plaintiffs also sue Mid–South, the EHLCO Trust, and three engineering firms involved in the remedial work. As to those defendants, the plaintiffs allege that the work was negligently done, that toxic dust from the remedial opera-

tions contaminated the plaintiffs' land and caused them personal injury, and that hazardous wastes continuing to escape from the site have contaminated their water supplies.

3. A "facility" is "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." See 42 U.S.C. § 9601(9).

cility [where] such hazardous substances were disposed of," *see* 42 U.S.C. § 9607(a)(2); "any person who ... arranged for disposal or treatment of hazardous substances possessed by such person at any facility ... owned or operated by another party and containing such hazardous substances," *see* 42 U.S.C. § 9607(a)(3); and "any person who accepts ... any hazardous substances for transport to disposal or treatment facilities ... or [to] sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance," *see* 42 U.S.C. § 9607(a)(4). *See also* 42 U.S.C. § 9607(a)(4)(B). The EPA, as an agency of the federal government, may be such a "person." *See* 42 U.S.C. § 9601(21) and 42 U.S.C. § 9620(a)(1).

■ Liability under the statute is generally strict and subject to very narrow defenses. *See, e.g., General Electric Co. v. Litton Industrial Automation Systems, Inc.,* 920 F.2d 1415, 1418 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991); *see also* 42 U.S.C. § 9607(b). If, however, the acts allegedly giving rise to liability were "taken or omitted in the course of rendering care, assistance, or advice in accordance with the National Contingency Plan," [4] then negligence must be proved. *See* 42 U.S.C. § 9607(d)(1).

The EPA contends, first, that all of its acts relative to the site in question were done under its authority "to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action" relating to the release of threatened release of hazardous substances, pollutants, and contaminants, *see* 42 U.S.C. § 9604(a)(1); *see also* Exec. Order No. 12580, § 2(g), 3 C.F.R. 193, 195 (1987 comp.), *reprinted in* 42 U.S.C.A. § 9615 notes at 225 (1991 supp.), and thus in the course of "rendering care, assistance, or advice" consistent with that plan. *See* 42 U.S.C. § 9607(d)(1). In support of this contention, the EPA submits an affidavit from the EPA employee who is in charge of directing the remedial efforts specified for the site at issue in this case. *See generally* 40 C.F.R. § 300.120, § 300.135. That affidavit summarizes the actions of the EPA in deciding how to clean up the site and in overseeing that remedial work. *See generally* 40 C.F.R. §§ 300.400–300.435. The affidavit is supplemented with various administrative records documenting the EPA's activities.

In their brief, the plaintiffs dispute that all of the EPA's actions relative to the site were within its authority or in accordance with the national contingency plan. They offer, however, no specific allegations of acts inconsistent with either the grant of authority to the EPA, *see* 42 U.S.C. § 9604(a)(1), or the provisions of the national contingency plan, *see* 42 U.S.C. § 9607(d)(1). Nor do they offer any evidence that would allow the court to find that the EPA was negligent in its conduct. *See id.* Under these circumstances, the court holds that the plaintiffs have failed to establish the existence of a genuine issue of material fact as to the liability of the EPA for any damages suffered by the plaintiffs. *See* Fed.R.Civ.P. 56(e). The court therefore grants the EPA's motion for summary judgment as to the plaintiffs' federal claim for damages and dismisses that claim with prejudice.

## II.

■ The EPA asserts that the claim based on state law must be dismissed as well, since the plaintiffs have failed to exhaust their administrative remedies. The court agrees.

The claim against the EPA based on state law is apparently for negligence. Li-

---

**4.** The national contingency plan is a formal declaration that establishes "procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants." *See* 42 U.S.C. § 9605(a). It specifies "procedures, techniques, materials, equipment, and methods to be employed in identifying, remov-ing, or remedying releases of hazardous substances." *Id.* The EPA has the responsibility of devising the national contingency plan. *See* 42 U.S.C. § 9615 and Exec. Order No. 12580, § 1(b)(1), 3 C.F.R. 193, 194 (1987 comp.), *reprinted in* 42 U.S.C.A. § 9615 notes at 223–24 (1991 supp.). *See generally* 40 C.F.R. pt. 300.

ability of the federal government, if any, on this claim may be pursued only under the Federal Tort Claims Act, *see* 28 U.S.C. § 2679(a); *see also* 28 U.S.C. § 1346(b). *See, e.g., Peak v. Small Business Administration,* 660 F.2d 375, 377 (8th Cir.1981).

■ Under that act, all claims must first be presented to the agency in question. *See* 28 U.S.C. § 2675(a). Unless a claim has been filed with the agency in question, moreover, a district court lacks jurisdiction over a lawsuit asserting the same claim. *See, e.g., Bor–Son Building Corp. v. Heller,* 572 F.2d 174, 177 (8th Cir.1978).

The EPA submits an affidavit from the person who maintains the record of administrative claims filed against the EPA. The affidavit asserts that no administrative claim from any of the plaintiffs has been filed with the EPA. The plaintiffs offer nothing to rebut this affidavit and in fact concede this point. Under these circumstances, the court holds that it lacks jurisdiction to consider the state tort claim against the EPA. That claim is therefore dismissed without prejudice.[5]

### III.

■ Finally, the EPA argues that the court lacks the power to order the EPA to reopen its remedial activities in relation to the site at issue, as the plaintiffs ask. The court agrees.

■ Such an order could be obtained in this case pursuant only to 42 U.S.C. § 9659(a)(2). That statute allows citizens

to sue the EPA for an "alleged ... failure ... to perform any act or duty [required by 42 U.S.C. §§ 9601–9675] ... which is not discretionary."[6] *See* 42 U.S.C. § 9659(a)(2). The relief available in suits of that type is an order to the EPA "to perform the act or duty concerned." *See* 42 U.S.C. § 9659(c).

The EPA argues that nothing in the law requires it to take remedial action, *i.e.,* that it is discretionary with the agency as to whether to act at all in relation to a particular site containing hazardous wastes. The EPA concludes, then, that the plaintiffs have failed to state a claim that would permit the court to grant this particular request. The court agrees.

The EPA's authority[7] to conduct remedial action in relation to a site containing hazardous wastes is specified in several provisions. Under 42 U.S.C. § 9604(a)(1), the EPA is "authorized to act ... and provide for remedial action." The statute also provides that "to the extent the [EPA] deems practicable," any removal action "should ... contribute to the efficient performance of any long term remedial action." *See* 42 U.S.C. § 9604(a)(2). The statute further provides that as to certain types of releases of hazardous wastes that are ordinarily excluded from the EPA's power to act, *see* 42 U.S.C. § 9604(a)(3), but that may be considered under emergency circumstances, the EPA "may respond." *See* 42 U.S.C. § 9604(a)(4).

---

5. Even if the plaintiffs file an administrative claim with the agency, moreover, the court believes that a suit based on that claim would be barred by the discretionary function exception to the Federal Tort Claims Act. *See* 28 U.S.C. § 2680(a). More extensive consideration of that issue is included in the court's discussion of the EPA's motion to dismiss the cross-claim of Rollins Environmental Services.

6. The court agrees with the EPA that because the statutes related to hazardous wastes, *see* 42 U.S.C. §§ 9601–9675, specify a "sufficiently comprehensive" scheme, *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981), for judicial consideration of the EPA's actions, the plaintiffs may not proceed under the mandamus statute, 28 U.S.C. § 1361.

*See, e.g., Borntrager v. Stevas,* 772 F.2d 419, 420 (8th Cir.1985), *cert. denied,* 474 U.S. 1008, 106 S.Ct. 533, 88 L.Ed.2d 464 (1985), and *Nova Stylings, Inc. v. Ladd,* 695 F.2d 1179, 1180–81 (9th Cir.1983). *See generally* Annotation, *Construction and Application of 28 U.S.C. § 1361,* 13 A.L.R.Fed. 145 (1972). In any case, the power of the court under the mandamus statute is the same as that under 42 U.S.C. § 9659(a)(2), *i.e.,* the power to consider whether a federal agency has refused to undertake acts that are required by law.

7. For the sake of simplicity, the court is treating all references to the President in the statute as being to the EPA. *See* Exec. Order No. 12580, § 2(g), § 4(d)(1), 3 C.F.R. 193, 195, 197 (1987 comp.), *reprinted in* 42 U.S.C.A. § 9615 notes at 225 (1991 supp.).

Other provisions state that the EPA "may require" the Attorney General to seek judicial relief "to abate [the] danger or threat" to "the public health or welfare or the environment" consequent to "an actual or threatened release of a hazardous substance" and "may" issue "such orders as may be necessary to protect public health and welfare and the environment." *See* 42 U.S.C. § 9606(a). As the EPA points out, all of this language is permissive, not mandatory. Regulations issued by the EPA specify the steps to be taken in response to a release or threatened release of hazardous wastes. *See generally* 40 C.F.R. §§ 300.400–300.435. Even those, however, state that in "determining the need for and in planning or undertaking ... [remedial] action, the [EPA] shall, to the extent practicable," do certain things. *See* 40 C.F.R. § 300.400(c).

The regulations do specify that once a response is initiated, the EPA "shall" undertake certain tasks. *See, e.g.,* 40 C.F.R. §§ 300.415, 300.420, 300.430, 300.435. The plaintiffs offer no specific allegations, however, of any required tasks not performed in the EPA's conduct of remedial action at the site in question.

■ Under these circumstances, the court holds that to the extent any review might be permissible, the plaintiffs have failed to state a claim. As to acts that are discretionary with the EPA, the court holds that it has no power to order the agency to reopen its remedial activities at the site. That claim is therefore dismissed with prejudice.

## IV.

■ The EPA also moves to dismiss the cross-claim against it of Rollins Environmental Services, a contractor involved in the remedial work at the site. The cross-claim is for contribution.[8] *See* 42 U.S.C. § 9613(f)(1) and Ark.Code Ann. § 16–61–202(1). The EPA argues that since it cannot be held liable to the plaintiffs, it cannot

be held liable for contribution to any other defendant.

As to the federal claim, first, the court agrees. The statute allowing claims for contribution authorizes such claims against persons "who [are] liable or potentially liable" under 42 U.S.C. § 9607(a). Since the court has held that the EPA is not liable to the plaintiffs under the statute, no claim for contribution against it may be pursued. The contribution claim of Rollins Environmental Services under federal law is therefore dismissed with prejudice as to the EPA.

■ As to the cross-claim for contribution based on state law, that clearly must be brought under the Federal Tort Claims Act. *See* 28 U.S.C. § 2679(a); *see also* 28 U.S.C. § 1346(b). Since it is a cross-claim authorized by Fed.R.Civ.P. 13(g), however, the administrative exhaustion requirement does not apply. *See* 28 U.S.C. § 2675(a).

■ The EPA argues that it may not be held liable for this cross-claim because its conduct in devising and implementing a plan for remedial action was discretionary and therefore excepted from the coverage of the Federal Tort Claims Act. *See* 28 U.S.C. § 2680(a). The statute excludes from coverage any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency[,] ... whether or not the discretion involved be abused." *See id.* The court agrees.

■ "Where Congress has delegated the authority ... to the executive branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs. In addition, the actions of [an agency] involving the necessary element of choice and grounded in the social,

---

**8.** Rollins Environmental Services alleges no facts that would give it a basis for an indemnity claim.

economic, or political goals of the statute and regulations are protected." *United States v. Gaubert*, —— U.S. ——, ——, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991). Decisions made "at the operational or management level" may also be protected, *id.* at ——–——, 111 S.Ct. at 1274–75; "[d]iscretionary conduct is not confined to the policy or planning level." *Id.* at ——, 111 S.Ct. at 1275. The exception also applies to negligent acts, which, after all, may be considered a form of abuse of discretion. *Dalehite v. United States*, 346 U.S. 15, 33, 73 S.Ct. 956, 966, 97 L.Ed. 1427 (1953); *see also Gaubert*, —— U.S. at ——– ——, 111 S.Ct. at 1279–80.

If a statute or regulation allows discretion in its implementation, "the very existence of the [statute or] regulation creates a strong presumption that a discretionary act authorized by the [statute or] regulation involves consideration of the same policies which led to the promulgation of the [statute] or regulations." *Gaubert*, —— U.S. at ——–——, 111 S.Ct. at 1274–75. An agency's acts "when exercising that discretion" must, therefore, "be presumed" to be "grounded in policy." *Id.* at ——, 111 S.Ct. at 1274–75.

As discussed above, the statutes and some of the regulations relating to hazardous wastes, *see* 42 U.S.C. §§ 9601–9675 and 40 C.F.R. § 300.400(c), authorize but do not require particular acts by the EPA in response to a release or threatened release of hazardous wastes. Other EPA regulations do require certain acts to be done. *See, e.g.,* 40 C.F.R. §§ 300.415, 300.420, 300.430, 300.435. The court notes, however, that for a claim "to survive a motion to dismiss [or a motion for summary judgment], it must allege [or establish the arguability of] facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.*

The allegedly negligent acts of the EPA as to which Rollins Environmental Services seeks contribution were evidently done in carrying out the remedial plan established for the site in question. In defense of its cross-claim, however, Rollins offers no specific allegations as to what those acts were; in what way the EPA failed to comply with the statutes relating to hazardous wastes, *see* 42 U.S.C. §§ 9601–9675, the national contingency plan, *see* 40 C.F.R. pt. 300, or any other applicable law; or why those acts were not grounded in the same policy considerations as underlie the statutes and regulations relating to hazardous wastes.

In light of that failure, the court holds that Rollins Environmental Services cannot maintain the cross-claim for contribution against the EPA that is based on state law. That claim is therefore dismissed with prejudice.