# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

―――――――

No. 99-4036

―――――――

Dunn L. Johnson; Eddie Johnson;          *
Annie Powell; Janis Austin; Barbara      *
Ann Carroll; John Carroll; Lavern        *
Carroll; Jesse Dunn; Byron Goodwin;      *
Derrick Goodwin; Jo Nell Goodwin;        *
Willie Ruth Graham; Bobby R.             *
Johnson; Danny Adam Johnson;             *
Drusella Lannette Johnson;               *
Earl Johnson, Jr.; Earnest Johnson;      *
Harvey Lee Johnson; Herbert Johnson,     *   Appeal from the United States
Jr.; Horace Johnson; James Johnson;      *   District Court for the
Jerry Wayne Johnson; Jesse Norise        *   Western District of Arkansas.
Johnson; Jimmie L. Johnson;              *
Johnnie B. Johnson; Karen Johnson;       *
Linda Anne Johnson; Reggie Johnson;      *
Ricky Johnson; Ronnie Johnson;           *
Sammy Johnson; Thomas Johnson;           *
Virdie Johnson, Jr.; Wade Johnson;       *
Willie Aaron Johnson; Willie L.          *
Johnson; Wordie B. Johnson; Lilly Mae    *
Lias; Pearlie Ann Livingston; Janette    *
Massey; Sharon Ann Moore; Essie Mae      *
Rankin; Renese Goodwin Smith;            *
Francine Johnson Wood; Lethell           *
Johnson Woods; Marsha L. Smith           *
Spencer,                                 *
                                         *
           Plaintiffs - Appellants,      *
                                         *

v.         *
        *
James Langley Operating Company,     *
Inc.,     *
    *
        Defendant,     *
    *
J. C. Langley, Individually & doing     *
business as J.C. Langley Oil     *
Company; Klote T. Powell,     *
    *
        Defendant - Appellees,     *

- - - - - - - - - - - - - - - - - - - -

Grover Smith; Zenora Powell;     *
Melissa K. Smith Carter; Martha     *
Kennedy Smith; Sarah Minor,     *
    *
        Plaintiffs - Appellants,     *
    *
AJ & K Operating Company; Cross     *
Oil Refining & Marketing, Inc.;     *
    *
        Defendants - Appellees,     *
    *
James Langley Operating Company,     *
Inc.; Lion Oil Company; Phillips     *
Petroleum Company;     *
    *
        Defendants.     *

_____

Submitted: May 8, 2000

Filed: September 21, 2000

_____

Before RICHARD S. ARNOLD and HEANEY, Circuit Judges, and MAGNUSON[1], District Judge.

_____

HEANEY, Circuit Judge.

In January 1998, Dunn L. Johnson and a group of forty-four other holders of interests in real estate in Union County, Arkansas commenced in the district court an action under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9607-9675 against a group comprised of persons and entities who leased land for oil and gas production operations. Grover Smith and five additional plaintiffs simultaneously commenced a similar action. After consolidating the cases for trial, the district court granted summary judgment on the CERCLA claims in favor of defendants J.C. Langley, J.C. Langley Oil Company (collectively, Langley), and AJ&K Operating Company. The plaintiffs appeal; we reverse and remand.

## I. BACKGROUND

In their virtually identical amended complaints, the two sets of plaintiffs alleged that the defendants' oil and gas production activities caused the properties at issue to become contaminated with radioactive scales, salt water, oil and grease, heavy metals and other hazardous substances. As relevant to this appeal, plaintiffs claimed they were entitled to response costs under CERCLA, and added several state-law causes of action.

_____

[1]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

Following discovery, Langley and AJ&K moved for summary judgment on the CERCLA claim and for dismissal of the state-law claims. With respect to the CERCLA claim, they argued that plaintiffs had failed to make out a prima facie case of CERCLA liability because there was no evidence that plaintiffs had incurred any costs related to cleanup or removal of hazardous substances. Defendants also argued that their crude oil operations were excluded from CERCLA under 42 U.S.C. § 9601(14).

In support of their claims, plaintiffs produced two reports by Edwin Cargill of Radiation Protection Resources, Inc., prepared on August 4, 1999. In the first report, Cargill tells of visiting the Johnson property to perform a number of tests on five different sites within the property's boundaries. Four sites did not display radiation above background levels. The fifth site, an operating well, revealed elevated radiation levels. In a second report, prepared on the same date, Cargill relates that he surveyed ten sites on the Smith property, nine of which indicated only background levels of radiation. At the tenth site, however, Cargill found another area with elevated radiation levels.

Plaintiffs also submitted a paper presented by A.L. Smith in May 1985 at the 17th Annual Offshore Technology Conference in Houston, Texas. In the paper, Smith notes that the water present in a reservoir of oil and gas contains dissolved mineral salts, a small proportion of which may be naturally radioactive. According to Smith, as the oil and gas are depleted through production, water is produced in the reservoir, resulting in the deposit into the oil production system of mineral scales that contain measurable quantities of natural radioactivity. The plaintiffs contended that the process described by Smith had resulted in the contamination of their property with radioactive substances deemed to be hazardous under CERCLA.

4

In a September 1999 ruling, the court granted in part and denied in part defendants' motion. Relying primarily upon the Fifth Circuit's decision in <u>Amoco Oil Co. v. Borden, Inc.</u>, 889 F.2d 664 (5th Cir. 1989), the court concluded:

> [I]n order to hold the defendants liable under CERCLA, the plaintiffs in these cases must demonstrate that the levels of hazardous material found on the property pose a threat to the public health or environment. One way to do this would be to demonstrate that the hazardous materials are present at levels that violate applicable state or federal law.

<u>Johnson v. Langley</u>, Nos. 98-1007 & 98-1008, slip op. at 14 (W.D. Ark. Sept. 16, 1999) (footnote omitted) (Order Granting Partial Summ. J.).

The court noted the plaintiffs had failed to provide any concrete evidence that radioactive substances were present on the subject property at levels that violate any applicable state or federal standards. Nevertheless, the court declined to grant summary judgment on the plaintiffs' CERCLA claims "[b]ecause of the serious nature of the allegations," and gave the plaintiffs another chance to produce supporting evidence. <u>Id.</u> at 15. The court instructed the plaintiffs "to submit additional evidence at least sufficient to raise a genuine issue of fact as to whether the release or threatened release of a hazardous substance has caused the incurrence of response costs that are necessary and consistent with the national contingency plan." <u>Id.</u> The court set a one-week deadline for the production of such additional evidence.

The court also rejected as premature the defendants' argument that they were entitled to summary judgment by virtue of CERCLA's petroleum exclusion. While the court acknowledged that CERCLA specifically excludes from its definition of hazardous substances "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance," the court concluded that a fact issue remained as to whether the radioactive material on the

5

property was derived solely from petroleum.  Id. (quoting § 9601(14)).  Finally, the court granted defendants partial summary judgment on plaintiffs' personal-injury claims, as plaintiffs had failed to produce any supporting evidence.[2]

The court issued a second ruling in October 1999, in which it evaluated the evidence presented by the parties in light of the legal conclusions of its September ruling.  See Johnson v. Langley, Nos. 98-1007 & 98-1008 (W.D. Ark. Oct. 12, 1999) (Order Granting Summ. J.).  The court first determined that the substances plaintiffs claimed had been released--Radium-226 and -228, cadmium, lead, and xylenes--were hazardous substances under CERCLA.  However, the court ruled that the xylenes were subject to CERCLA's petroleum exclusion.  The court noted that xylene had been found in only one of the pits on the property, which supported defendants' claim that any xylenes present were the result of petroleum spillage.  By contrast, plaintiffs presented no evidence to support their theory that the xylenes came from the bottoms of crude oil storage tanks and were therefore not subject to the petroleum exclusion.

Next, the court reiterated its earlier ruling that in order to recover response costs, plaintiffs had to create a genuine fact issue as to whether they incurred those costs by acting to contain a release threatening the public health or environment.  The court conceded that it might be possible "to conceive of a factual scenario under which a CERCLA plaintiff would be justified for having incurred costs in response to a perceived release or threatened release of a hazardous substance when that substance is not later shown to exist on either the defendant's and/or plaintiffs' property at a level posing a threat to the public health."  Id. at 20.  However, the court concluded this was not such a case.  The court noted that plaintiffs had conducted testing nearly a year and a half after filing suit:

---

[2]The district court's ruling with respect to the personal injury claims is not disputed in appellants' briefs, and is therefore not at issue in this appeal.

6

The plaintiffs in these cases did not perform testing responding to a perceived release or threatened release, rather, their purpose for testing was to prove the elements of the plaintiffs' claims against the defendants. Therefore, the Court concludes that if the levels of hazardous substances found on the Johnson and Smith properties pose no risk to the public health, there is no danger presented by the release or threatened release of the substances . . . [and] plaintiffs' responsive actions are not justified, and the defendants may not be held liable . . . .

Id. at 20-21.

The court noted that the plaintiffs' expert, Stanley Waligora, opined that based on the data obtained from the sites contamination levels on the properties posed a threat to public health and the environment. However, the court criticized the data upon which Waligora based his conclusion, noting only six of plaintiffs' eight water samples were identified as having been taken from the plaintiffs' property, and there was no evidence that the sampling and analytical test procedures complied with EPA requirements, or that the tests were performed by an EPA- or Arkansas-certified laboratory.

The court further noted that while plaintiffs claimed dose-based radiation measurements at the sites exceeded EPA limits, they had failed to submit any dose-based evidence. Moreover, the court disagreed with Waligora's assertion that a dose rate could be extrapolated from the plaintiffs' concentration-level figures alone. According to the court, such an extrapolation directly contradicted EPA guidelines dictating that dose levels must reflect site-specific factors, and therefore could not be considered "generally acceptable."

The court then proceeded to examine whether the levels of hazardous substances exceeded applicable or relevant and appropriate standards. The court concluded plaintiffs failed to produce evidence that radiation levels found in water samples from

7

the property exceeded the maximum levels established by EPA pursuant to the Safe Drinking Water Act (SDWA). The court also rejected plaintiffs' argument that contamination levels exceeded standards imposed by Arkansas regulations, concluding the regulations cited by plaintiffs either did not apply to the activities defendants conducted on the property, or were too vague to be properly considered an applicable and/or relevant and appropriate standard under CERCLA. Finally, the court also noted plaintiffs failed to provide reports or test results establishing that emulsion, solids, and/or waste oil were present on the property.

Having determined that plaintiffs failed to show contamination in excess of applicable or relevant and appropriate standards, the court granted the defendants summary judgment on the CERCLA claims, and declined to exercise supplemental jurisdiction over plaintiffs' remaining state-law claims. Plaintiffs appeal, arguing that the court erred in adopting the Amoco standard, but that even under that standard, they showed they justifiably incurred response costs. Defendants contend that plaintiffs' testing expenses, incurred some eighteen months after filing suit, are litigation expenses, and not response costs. They also argue that the district court was correct in rejecting plaintiffs' scientific evidence and expert testimony.

## II. DISCUSSION

In order to establish CERCLA liability, a plaintiff must prove (1) defendant is within one of four classes of covered persons enumerated by 42 U.S.C. § 9607(a)(1)-(4); (2) a release or threatened release of a hazardous substance from a facility has occurred; (3) the release or threatened release caused plaintiff to incur response costs; and (4) those response costs were consistent with the National Contingency Plan (NCP), 40 CFR §§ 300.1-.1105 (1999). See 42 U.S.C. § 9607(a); Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 934 (8th Cir. 1995).

The thrust of defendants' Amoco argument is that CERCLA plaintiffs' response costs are justified and recoverable only where the release threatened the public health or the environment. According to defendants, plaintiffs' testing failed to reveal any contamination in excess of any legally applicable or relevant and appropriate requirement (ARAR) under 42 U.S.C. § 9621(d)(2)(A), plaintiffs were unjustified in conducting testing at the sites.

In Amoco, the Fifth Circuit held that CERCLA response costs are caused by a release or threatened release--and thus may be recovered in a CERCLA action--only where such costs are justified by proof that a release threatened the public health or environment. The court specifically rejected the argument that liability automatically attaches upon the release of any quantity of a hazardous substance. The Amoco court concluded that to so construe CERCLA would "exceed its statutory purposes by holding parties liable who have not posed any threat to the public or environment." Amoco, 889 F.2d at 670.

Instead, the court advocated "a factual inquiry into the circumstances of a case" to determine whether any response actions were justified. Id. Although the court did not identify the minimum showing necessary to justify response costs, the court held that "a plaintiff who has incurred response costs meets the liability requirement as a matter of law if it is shown that any release violates, or any threatened release is likely to violate, any applicable state or federal standard, including the most stringent." Id. at 671.

Subsequently, the Fifth Circuit decided in Licciardi v. Murphy Oil U.S.A., Inc., that a finding of hazardous substances elevated above background levels, but not in excess of any ARAR, was insufficient to justify the landowners' incurrence of testing and sampling costs. See 111 F.3d 396, 399 (5th Cir. 1997). The court concluded that plaintiffs' evidence of elevated lead levels failed to show that the release posed a threat to the public or the environment. See id.

9

We disagree with <u>Amoco</u> and <u>Licciardi</u> to the extent that they saddle a landowner with the costs of testing and sampling in response to a release or threat of a release of hazardous substances. CERCLA plainly contemplates liability for site assessment. The statute defines "response" to include removal actions. <u>See</u> 42 U.S.C. § 9601(25). Removal, in turn, includes "such actions as may be necessary to <u>monitor, assess, and evaluate the release or threat of release</u> of hazardous substances." 42 U.S.C. § 9601(23) (emphasis added). Moreover, CERCLA's plain language does not incorporate any quantitative threshold into its definition of hazardous substances. <u>See</u> <u>United States v. Alcan Aluminum Corp.</u>, 964 F.2d 252, 260-61 (3d Cir. 1992) (collecting cases); <u>Amoco</u>, 889 F.2d at 669.

To fashion a quantitative minimum threshold for CERCLA liability under the guise of a non-statutory "justification" theory is to undo the policy decision Congress has already made: that the threat posed by hazardous substances does not depend upon a minimum concentration or quantity. <u>See</u> <u>Acushnet Co. v. Mohasco Corp.</u>, 191 F.3d 69, 78 n.9 (1st Cir. 1999) (<u>Amoco</u> "'reads much too much into the word "causes" in section 9607(a)(4)'" (quoting <u>A & W Smelter & Refiners, Inc. v. Clinton</u>, 146 F.3d 1107, 1110 (9th Cir. 1998)); <u>Stewman v. Mid-South Wood Products of Mena, Inc.</u>, 993 F.2d 646, 649 (8th Cir. 1993) ("[T]here is no minimum quantitative requirement to establish a release or threat of a release of a hazardous substance under CERCLA.").

CERCLA allocates to the generator of hazardous substances the cost of ascertaining the danger posed by an actual or threatened release of hazardous substances, even if such testing determines that levels do not warrant cleanup action. The statute contains its own limitations to ensure that response costs are justified and that private cost recovery actions for expenses incurred in site evaluation do not become a vehicle for wholly speculative testing.

First, response costs must be caused by an actual release or a threatened release. <u>See</u> <u>General Elec. Co. v. Litton Indus. Automation Sys., Inc.</u>, 920 F.2d 1415, 1417 (8th

10

Cir. 1990). We have previously speculated in dicta that the degree of connection required "may be slight indeed." Control Data, 53 F.3d at 935 n.8. Our rejection of Amoco confirms that speculation inasmuch as the causation requirement does not include an unstated quantitative threshold. Rather, it requires that plaintiffs prove either that there was a release of hazardous substances, or that such a release was threatened.[3] CERCLA's petroleum exclusion will come into play at this point: if the release or threatened release involved only excluded materials, plaintiffs may not recover.[4] See generally United States v. Gurley, 43 F.3d 1188, 1199 (8th Cir. 1994) (outlining scope of petroleum exclusion).

Appellees contend that the response costs at issue here were not caused by a release, asserting plaintiffs failed to commence site assessment until after filing suit. They note "[p]laintiffs were not acting pursuant to any mandate by any state or federal agency . . . and have made no attempts to remediate the property." (Br. at 22.) In General Electric, we observed that "CERCLA is a strict liability statute, with only a limited number of statutorily-defined defenses available." 920 F.2d at 1418.

[3]Although we have yet to consider what level of risk constitutes a threatened release, we note that threatened releases have been found to include a defendant's mere ownership of "corroding and deteriorating tanks," a defendant's "lack of expertise in handling hazardous waste," or a defendant's "failure to license the facility." New York v. Shore Realty Corp., 759 F.2d 1032, 1045 (2d Cir. 1985).

[4]The district court's October 1999 ruling appears to have placed upon the plaintiffs the burden of proving that the substances they claim to have discovered on their properties were not subject to the petroleum exclusion. We agree with the Tenth Circuit's conclusion that once plaintiffs have presented evidence to support their allegation of a release or threatened release, defendants bear the burden of showing the petroleum exclusion applies. See Tosco Corp. v. Koch Indus., Inc., No. 98-6209, 2000 WL 702380, at *9 n.5 (10th Cir. May 26, 2000); see also United States v. First City Nat'l Bank, 386 U.S. 361, 366 (1967) (noting general rule that party claiming benefit of exception to statutory prohibition bears burden of proof).

Accordingly, we rejected the argument that cleanup costs prompted by the threat of litigation were not caused by a release, but were unrecoverable litigation expenses: "CERCLA does not provide for an 'unclean hands' defense . . . . Thus, the motives of the private party attempting to recoup response costs . . . are irrelevant." Id. Likewise, plaintiffs' response costs in this case are not transformed into litigation costs merely by their timing with respect to their initiation of this action.

Appellees point out that the plaintiffs in General Electric had undertaken a removal action pursuant to a plan approved by the Missouri Department of Natural Resources, and had made a formal demand for indemnity prior to filing suit. These facts relate primarily to the issue of whether plaintiff's removal actions complied with the NCP, see id. at 1419-20, and are not in and of themselves prerequisites for § 9607(a) liability, see Artesian Water Co. v. Government of New Castle County, 851 F.2d 643, 651 (3d Cir. 1988); Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 892 (9th Cir.1986).

Second, a more significant limitation is imposed by CERCLA's requirement that response costs be "necessary" and consistent with the NCP to be recoverable by a private party. See 42 U.S.C. § 9607(a)(4)(B). Testing and sampling expenses are necessary only if the party seeking to recover costs has an objectively reasonable belief that the defendant's release or threatened release of hazardous substances would contaminate his or her property. See Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209, 1219 (3d Cir. 1993) (stating CERCLA liability for testing requires that "there was a reasonable risk (although one that may not materialize) that the defendant's release or threatened release of hazardous substances would contaminate the plaintiff's property"). Furthermore, testing methods that are scientifically deficient or unduly costly cannot be necessary. See id. (stating plaintiff may recover only monitoring and evaluation expenses incurred "in a reasonable manner").

This is the appropriate context for consideration of defendants' criticism of plaintiffs' scientific evidence. In light of our rejection of <u>Amoco</u>, the results of site assessments obtained by the plaintiffs are not determinative of the plaintiffs' ability to recover the cost of such assessments. The fiscal reasonableness and scientific validity of the procedures employed in obtaining the results, however, are essential to a showing that plaintiffs' costs were necessary. Moreover, while plaintiffs' attorneys' services in analyzing the assessment data might otherwise be characterized as response costs under <u>Key Tronic Corp. v. United States</u>, 511 U.S. 809, 820 (1994), if the data are scientifically untrustworthy, the lawyers' services are likewise unnecessary and unrecoverable.

## III. CONCLUSION

For the forgoing reasons, the judgment of the district court is reversed. The matter is remanded to the district court for further proceedings not inconsistent with this opinion.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

13